**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MIGHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311 <br> : Honorable Marianne O. Battani <br> : |
| In Re: Wire Harness Cases | : <br> : <br> : |
| THIS DOCUMENT RELATES TO Public Entities | : 2:14-cv-00106-MOB-MKM <br> : <br> : **Oral Argument Scheduled for** <br> : **January 28, 2015** |

**PUBLIC ENTITY PLAINTIFFS' OPPOSITION TO DEFENDANTS'
COLLECTIVE MOTION (1) TO DISMISS ALL CLASS COMPONENTS OF THE
COMPLAINT AND (2) FOR A MORE DEFINITE STATEMENT REGARDING NAMED
PLAINTIFFS' INDIVIDUAL CLAIMS**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................2

III.  THE 11TH AMENDMENT OFFERS DEFENDANTS NO HAVEN ...................3

      A. Defendants' 11th Amendment Argument is Not Justiciable...............................4

           1.  Defendants Lack Standing to Assert the 11th Amendment Rights
               of Their Adversaries ........................................................................4

           2.  Defendants' 11th Amendment Contention Is Not Ripe .......................................6

      B. *Walker* Is Inapplicable and Was Incorrectly Decided .........................................8

IV.   RULE 23 SUPPORTSPUBLIC ENTITY CLASS ACTIONS ...........................13

      A. Defendants' Public Entity Exclusion Argument Is Not Justiciable..................13

      B. The Supreme Court's Decision in *Shady Grove* Forecloses
         Defendants' Public Entity Exclusion Argument.................................................15

      C. Classes of Governmental Entities Have Been a Feature of Rule 23
         Practice for Decades ..........................................................................................18

      D. Even Independent of *Shady Grove* and Decades of Rule 23 Practice,
         Defendants' Public Entity Exclusion Argument Lacks Merit .........................20

           1.  Defendants' Contentions Regarding Local Public Entities Are
               Unsupported and Ignore Controlling State Supreme Court Authority ............20

           2.  No Relevant State Statute or Appellate Decision Disables States from
               Benefitting as Absent Plaintiff Class Members ................................................31

V.    DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT SHOULD
      BE DENIED FOR FAILING TO COMPORT WITH RULES 8 AND 9..........................37

VI.   DEFENDANTS' STANDING ARGUMENTS MUST FAIL BECAUSE THIS COURT
      HAS ALREADY REJECTED THEM IN SIMILAR *AUTOMOTIVE PARTS* CASES .....41

VII.  DEFENDANTS' CITE TO *IN RE LITHIUM BATTERIES ANTITRUST LITIGATION*
      IS INAPPOSITE TO THIS CASE .........................................................................44

VIII. CONCLUSION ....................................................................................................46

i

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Wayne County*
    760 F.2d 689 (6th Cir. 1985) ............................................................................. 5

*Amato v. Wilentz*
    952 F.2d 742 (3d Cir. 1991)............................................................................. 15

*Amchem Prod. Inc v. Windsor*
    521 U.S. 591 (1997)............................................................................ 46, 47, 49

*Bellavance v Frank Morrow Co*
    2 F.R.D. 9 (D.R.I. 1941) ................................................................................. 42

*Bicknell v. Lloyd-Smith*
    25 F. Supp. 657 (E.D.N.Y. 1938) ................................................................... 44

Califano v. Yamasaki
    442 U.S. 682 (1979)........................................................................................ 18

*Campbell v. Hope Cmty. Credit Union*
    2012 U.S. Dist. LEXIS 15530 at 11-2 (W.D. Tenn., Feb. 7, 2012)................. 46

*Cellars v. Pacific Coast Packaging, Inc.*
    189 F.R.D. 575 (N.D. Cal. 1999)................................................................... 42

*City of Dubuque v. Iowa Trust*
    519 N.W.2d 786 (Iowa 1994) ........................................................................ 34

*City of Goodlettsville v. Priceline.com, Inc.*
    267 F.R.D. 523 (M.D. Tenn. 2010) ........................................................... 22, 25

*City of San Benito v. Rio Grande Valley Gas Co.*
    109 S.W.3d 750 (Tex. 2003).................................................................. 25, 26, 30

*College Sav. Bank v. Fla. Prepaidpostsecondary Ed. Expense Bd.*
    527 U.S. 666 (1999).............................................................................. 6, 11, 12

*County of Monroe, Fla. v. Priceline.com, Inc.*
    265 F.R.D. 659, (S.D. Fla. Mar. 15, 2010) ............................................... 22, 26

*County of Stanislaus*
    947 P.2d 291 (1997)........................................................... 15, 26, 28, 29, 30

*County of Sullivan v. Thompson*
    471 N.Y.S.2d 399 (N.Y. App. Div. 3d Dep't 1984) ..................................... 30, 31

*County of Ulster v. Ulloa*
    2011 U.S. Dist. LEXIS 19851 at 6 (N.D.N.Y., Mar. 1, 2011)......................... 26

*Dallas County v. Merscorp, Inc*
    2012 U.S. Dist. LEXIS 176533 (N.D. Tex., Dec. 13, 2012) ........................... 24

*Dealer Computer Servs. v. Dub Herring Ford*
    623 F.3d 348 (6th Cir. 2010) .............................................................. 7, 8, 17

*Devlin v. Scardelletti*
    536 U.S. 1 (2002)............................................................................................. 7

*Donahue v L. C. L. Transit Co.*
    492 F.Supp. 288 (W.D. Wisc. 1980)............................................................... 44

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*
    485 U.S. 568 (1988)........................................................................................ 11

*Fallick v. Nationwide Mut. Ins. Co.*
  162 F.3d 410 (6th Cir. 1998) ............................................................ 46, 47, 49
*Florida ex rel. Shevin v. Exxon Corp.*
  526 F.2d 266 (5th Cir. 1976) .................................................................. 36
*General Motors Corp. v. New York*
  501 F.2d 639 (2d Cir. 1974)................................................................... 32
*Grand Traverse County v. State*
  538 N.W.2d 1 (Mich. 1995)................................................................... 33
*H.D.V. - Greektown, LLC v. City of Detroit*
  568 F.3d 609 (6th Cir. 2009) ................................................................. 11
*Hawaii v. Standard Oil Co.*
  405 U.S. 251 (1972) .............................................................................. 28
*Higgins v. Closeout Distribs. (In re Higgins)*
  159 B.R. 212 (S.D. Ohio1993) ............................................................. 49
*Hobbs v. BH Cars, Inc.*
  2004 U.S. Dist. LEXIS 10735, 5 (S.D. Fla. June 4, 2004) .................... 42
*Hoving v. Transnation Title Ins. Co.*
  545 F. Supp. 2d 662 (E.D. Mich. 2008)................................................ 46
*In re Fine Paper Litigation*
  632 F.2d 1081 (3d Cir. 1980)...................................................... 16, 21, 37
*In re Lithium Ion Batteries Antitrust Litig.*
  *2014 U.S. Dist. LEXIS 141358(N.D. Cal. Oct. 2, 2014)*..................... 2, 49
*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*
  488 F.3d 112 (2d Cir. 2007).................................................................. 12
*In re Packaged Ice Antitrust Litig.*
  779 F. Supp.2d 657 (E.D. Mich. 2011) ................................................. 46
*In re Refrigerator Compressors Antitrust Litig.*
  2012 WL 2917365 (E.D. Mich. July 17, 2012) .................................... 46
*Infineon*
  2014 U.S. Dist. LEXIS 89622 at 81.......................................... 26, 27, 30
*Jay v. Rosen*
  288 F.3d 918 (6th Cir. 2002) ................................................................. 48
*Jonida Trucking, Inc. v. Hunt*
  124 F.3d 739 (6th Cir. 1997) ................................................................... 5
*Landau v. Hynes*
  49 N.Y.2d 128 (N.Y. 1979) ................................................................... 37
*Lang v Texas & P. R. Co.*
  624 F2d 1275 (5th Cir. 1980) ............................................................... 44
*Lewis v. Casey*
  518 U.S. 343 (1996)............................................................................... 48
*Lukas v. McPeak*
  730 F.3d 635 (6th Cir. 2013) ................................................................. 35
*Lyng v. Northwest Indian Cemetery Prot. Ass'n*
  485 U.S. 439 (1988)................................................................................. 9
*Martin v. Thornburg*
  359 S.E.2d 472 (N.C. 1987).................................................................. 38

*Merced County v. Cook*
    52 P. 721 (Cal. 1898) ............................................................................ 15, 29
*Meridian Mut. Ins. Co. v. Kellman*
    197 F.3d 1178 (6th Cir. 1999) ...................................................................... 28
*Murphy v. Yates*
    348 A.2d 837 (Md. 1975) ............................................................................ 40
*Nair v. Oakland County Community Mental Health Auth*
    443 F.3d 469 (6th Cir. 2006) ......................................................................... 6
*New York v. GM Corp.*
    60 F.R.D. 393 (S.D.N.Y. 1973) ..................................................................... 31
*Nike, Inc. v. Kasky*
    539 U.S. 654 (2003) .................................................................................... 9
*Ortiz v. Fibreboard Corp.*
    527 U.S. 815 (1999) ............................................................... 11, 46, 47, 49
*Pacific Gas & Electric Co. v. County of Stanislaus*
    947 P.2d 291 (Cal.1997) ................................................. 15, 28, 29, 30
*Palum v. Lehigh Valley R. Co.*
    5 F.R.D. 216  (E.D.N.Y. 1946) ..................................................................... 44
*Philadelphia Elec. Co. v. Anaconda American Brass Co.*
    43 F.R.D. 452 (E.D. Pa. 1968) ..................................................................... 21
*Phillips Petroleum Co. v. Shutts*
    472 U.S. 797 (1985) ................................................................... 12, 13, 27
*Plymouth v. Detroit*
    377 N.W.2d 689 (Mich. 1985) ...................................................................... 33
*Poole v White*
    2 F.R.D. 40 (D. W.Va. 1940) ........................................................................ 42
*Prater v. City of Burnside*
    289 F.3d 417 (6th Cir. 2002) ......................................................................... 9
*Pro-Football, Inc. v. Harjo*
    2000 U.S. Dist. LEXIS 19792 (D. D.C., Dec. 11, 2000) .................................. 9
*San Francisco Health Plan v. McKesson Corp.*
    767 F.Supp.2d 263 (D. Mass. 2011) ............................................................ 22
*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*
    559 U.S. 393 (2010) .............................. 2, 17, 18, 19, 20, 23, 24, 26, 45
*Sibbach v. Wilson & Co.*
    312 U.S. 1 (1941) ...................................................................................... 19
*Singleton v. Wulff*
    428 U.S. 106 (1976) ..................................................................................... 5
*Smith v. Bayer Corp.*
    131 S.Ct. 2368 (2011) .................................................................................. 7
*Sossamon v. Texas*
    131 S. Ct. 1651 (2011) ................................................................................. 6
*State ex rel. Discover Fin. Servs. v. Nibert*
    744 S.E.2d 625 (W.Va. 2013) ...................................................................... 41
*State v. American Family Mut. Ins. Co.*
    609 N.W. 2d 1(Minn. App. 2000) ................................................................. 40

iv

*State v. Philip Morris, Inc.*
   763 N.Y.S.2d 32 (N.Y. App. Div. 1st Dep't 2003) ........................... 31
*Superintendent of Ins. v. Attorney Gen.*
   558 A.2d 1197 (Me.1989)................................................................... 39
*Things Remembered Inc. v. Petrarca*
   516 U.S. 124 (1995).......................................................................... 35
*Timmreck v. United States*
   577 F.2d 372 ..................................................................................... 49
*Tomera v. Galt*
   511 F.2d 504 (7th Cir. 1975) ............................................................ 43
*Tower Loan v. Maddox*
   15 F.3d 1347 (5th Cir. 1994) .............................................................. 6
*Town of Claverack v. Brew*
   716 N.Y.S.2d 748 (N.Y. App. Div. 2000) ................................... 31, 45
*Town of New Castle v. Yonkers Contracting Co.*
   131 F.R.D. 38 (S.D.N.Y. 1990) ........................................................ 32
*Twin City Fire Ins. Co. v. Innovative Aftermarket Sys.*
   597 F.Supp.2d 295 (D. Conn. 2009).................................................... 8
*United States v. Pipes*
   87 F.3d 840 (6th Cir. 1996) ................................................................ 5
*United States v. Simpson*
   520 F.3d 531 (6th Cir. 2008) ............................................................ 28
*Walker v. Liggett Group, Inc.*
   982 F. Supp. 1208 (S.D. W.Va. 1997)..................... 9, 10, 12, 13, 50
*Warth v. Seldin*
   422 U.S. 490 (1975)............................................................................ 5

## State Statutes

California Government Code § 25203 ...................................................... 29
Md. State Government Code § 6-106 ...................................................... 39
Me. Rev. Stat. tit. 5, § 191(3)................................................................. 39
Mich. Comp. Laws § 14.28..................................................................... 38
Mich. Comp. Laws § 87.20..................................................................... 33
Mich. Comp. Laws §§ 45.563(e) 49.71 and 49.153 .............................. 32
Minn. Stat. § 8.01 .................................................................................. 40
N.C. Gen. Stat. § 153A-114 ................................................................... 32
N.C. Gen. Stat. § 160A-173 ................................................................... 32
N.M. Stat. § 8-5-2(B) ............................................................................ 40
N.Y. County Law §§ 500-501................................................................. 30
N.Y. Exec. Law § 63(1) ......................................................................... 36
N.Y. Town Law § 65 .............................................................................. 31
W.Va. Code § 5-3-2 ............................................................................... 41

**Federal Rules**

Fed R. Civ. P. 1 ............................................................................................................... 18

Fed R. Civ. P. 9(a)(1) & (2). ........................................................................................... 44

Fed R. Civ. P. 23(c)(2)(B) ............................................................................................... 37

Fed R. Civ. P. 23(c)(2)(B)(iv) ......................................................................................... 21

Fed R. Civ. P. 23(c)(2)(B)(v) .......................................................................................... 21

## I.    INTRODUCTION

Two years ago, private plaintiffs filed a civil lawsuit in *In re Automotive Parts Antitrust Litigation* on behalf of classes of purchasers allegedly overcharged illegally for Defendants' wire harness systems in their vehicles.  Those classes did not include the myriad of state and local governmental entities that also purchased vehicles.  In February 2014, the instant case was filed on behalf of local governmental entities in seventeen states and nine States themselves, along with sovereign state level entities (collectively, the "Public Entities").  Amended Complaint ("AC") ¶ 157.  Seeking to preclude the Public Entities from enjoying the same rights as all other purchasers to seek recompense for illegally inflated prices, Defendants – many of whom are admitted antitrust violators – have filed, at the pleading stage, a Collective Motion (1) to Dismiss All Class Components of the Complaint and (2) for a More Definite Statement Regarding Named Plaintiffs' Individual Claims ("Motion").  The Motion is as procedurally improper as it is substantively ill-founded.

First, Defendants' argue that the 11th Amendment <u>requires</u> immediate dismissal of proposed class claims on behalf of states.  Even if Defendants had standing to assert the constitutional rights of their proposed state adversaries – and they do not – Defendants' novel theory is unripe for adjudication, and substantively incorrect.  Rule 23 is not unconstitutional as applied to the states.

Second, recognizing that their 11th Amendment theory applies only to the nine proposed state class members and their sovereign subunits, Defendants urge a state statutory theory for the remaining thousands of proposed local governmental entity class members (as well as the states). Defendants argue that routine and ubiquitous state statutes and local laws addressing the authority of public entity chief legal officers must be construed as "roadblocks" disabling all public entities from ever being plaintiff class members.  This theory runs counter to decades of federal court experience with public entity class actions.  It fails because Defendants lack standing to assert these state laws, their contentions are unripe and, substantively, (i) even if such state laws were construed as Defendants suggest, *Shady Grove Orthopedic Assocs., P.A. v.*

1

*Allstate Ins. Co.*, 559 U.S. 393 (2010) teaches that they must yield to Fed. R. Civ. P. 23, and (ii) there is no basis to conclude that such state laws would be or even can be construed as Defendants say they must.

Third, Defendants' motion for a more definite statement does not comport with the Federal Rules because it does not attack an ambiguity in the complaint, but rather seeks to impose a requirement to allege with specificity matters in contravention of Rule 9, and thus must fail.

Fourth, Defendants' effort to dismiss absent class members in states where no named representative resides derogates this Court's earlier rulings in other *In re Automotive Parts Antitrust Litigation* cases that the question whether the named plaintiffs can represent class members in other states is "logically antecedent" to the issue of standing and thus should be decided at the class certification stage, not upon a motion to dismiss. Similarly, Defendants' assertion of recent out of district authority – *In re Lithium Ion Batteries Antitrust Litig.,2014 U.S. Dist. LEXIS 141358(N.D. Cal. Oct. 2, 2014)* – is unavailing since it was based on the law in Northern District of California, whereas this Court's earlier rulings denying motions to dismiss like Defendants' were based firmly on controlling Sixth Circuit precedent.

Consequently, this Court should deny Defendants' Motion so that the Public Entities can seek remedies available to other injured purchasers of Defendants' products.

## II.   STATEMENT OF FACTS

As the Court is well aware from earlier proceedings, this case involves allegations that manufacturers of wire harness systems illegally colluded to impose supra-competitive prices for their products. The U.S. Department of Justice ("DOJ") began its investigation by 2010 when the FBI raided the U.S. offices of Defendants Denso, Tokai Rika and a subsidiary of Yazaki. AC ¶ 106. Defendants Furukawa, Yazaki, DENSO, G.S. Electech., and Fujikura have each separately pled guilty to participating in the wire harness systems cartel during the Class Period and agreed to pay substantial criminal fines totaling more than $770 million under plea agreements with the DOJ related to their unlawful conduct. AC ¶ 10. These Defendants

2

admitted to their participation in a combination and conspiracy with co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of wire harness systems sold to automobile manufacturers and others in the United States and elsewhere.  *Id.*

Prior class actions sought relief on behalf of purchasers of wire harness systems, but did not include governmental entities in their classes.  To prevent governmental entities from being left out in the cold while other purchasers receive redress, the City of Richmond, California filed its initial complaint on their behalf.  In the Amended Complaint at issue here, Plaintiffs seek equitable and injunctive relief for a nationwide class of "[a]ll municipalities, cities, counties, villages, towns and other local government subdivisions, agencies, districts, special districts and public utilities that indirectly purchased in the United States from any Defendant … an Automotive Wire Harness System not for resale."  AC ¶ 156.  Plaintiffs also seek damages on behalf of all "local government subdivisions and agencies, including but not limited to municipalities, cities, counties, villages, towns, districts, special districts and public utilities" in the seventeen states of Arizona, California, Iowa, Maine, Maryland, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina North Dakota, South Dakota, and Wisconsin, and West Virginia, and on behalf of the states and their "subdivisions, agencies and instrumentalities" in the nine states of  Arizona, Maine, Maryland, Michigan, Minnesota, New Mexico, New York, North Carolina, and West Virginia that indirectly purchased any wire harness system, either as a component of a purchased or leased vehicle or as a replacement part.  *Id.* ¶ 157.  Five diverse governmental entity plaintiffs propose to represent these classes: The City of Richmond, California; Traverse City, Michigan; Oakland County, Michigan; Mecklenburg County, North Carolina; and the Village of Northport, New York.  AC ¶¶ 30-34.

## III.    THE 11TH AMENDMENT OFFERS DEFENDANTS NO HAVEN

Defendants argue that the sovereign immunity that states enjoy in federal court under the 11th Amendment compels dismissal of the Public Entity Plaintiffs' claims to the extent they are

asserted on behalf of any state.  Defendants' 11th Amendment argument must be rejected.[1]

> ### A.   Defendants' 11th Amendment Argument is Not Justiciable

> #### 1.   Defendants Lack Standing to Assert the 11th Amendment Rights of Their Adversaries

Defendants lack standing to assert the states' 11th Amendment rights as a defense to negate or limit their own liability.  It is well-established that a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations omitted).  The Sixth Circuit has recognized that this principle is "perhaps the most prominent . . . prudential limitation[]" on standing, explaining:

> Courts do not decide cases based on the rights of third parties because 'it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not,' and 'third parties themselves usually will be the best proponents of their own rights.'

*Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 693 (6th Cir. 1985), *quoting Singleton v. Wulff*, 428 U.S. 106, 113-14, (1976).

If one lacks standing to assert the legal rights of third parties to the litigation, then *a fortiori*, one lacks standing to assert the legal rights of one's adversaries in the litigation.  *See Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997) (employer obligor lacked standing to assert conditional right of employee claimant to withdraw claim because employer's interests in avoiding liability were "at odds with" the claimant-protective goals of the conditional withdrawal right); *United States v. Pipes*, 87 F.3d 840, 844 (6th Cir. 1996) (defendant lacked

---

[1] Defendants' 11th Amendment assertions have no application to the vast majority of public entities – counties, cities, towns, villages and other municipal entities – which Public Entity Plaintiffs identify as putative class members.  It is well established that 11th Amendment sovereign immunity "bars suits against States but not lesser entities."  *Alden v. Maine*, 527 U.S. 706, 756 (1999) ("immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State.")*; Cady v. Arenac County*, 574 F.3d 334, 345 (6th Cir. 2009) ("Units of local government are not entitled to sovereign immunity under the Eleventh Amendment.")

standing to assert, in defense to federal criminal liability, the rights of state in compliance with state statute requiring prior court approval of use, in reverse sting operation, of marijuana confiscated by state police); *Tower Loan v. Maddox (In re Maddox)*,15 F.3d 1347, 1354 n.41 (5th Cir. 1994) (creditor lacks standing to assert debtor's right to freedom from compelled joinder because, *inter alia*, "creditors . . . are usually in an adversarial relationship with their debtors").  Defendants' interests here – pre-emptively foreclosing their own class action liability to the states – are diametrically opposed to those of the states who were allegedly harmed by Defendants' misconduct.

Not surprisingly, given their objective, Defendants' Motion seeks to convert the states' 11th Amendment rights and prerogatives into an incapacity.  "A State . . . may choose to waive its immunity in federal court at its pleasure."  *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011).  The decision whether to waive 11th Amendment immunity, or not, lies solely with the state.  *See College Sav. Bank v. Fla. Prepaidpostsecondary Ed. Expense Bd.*, 527 U.S. 666, 675 (1999) ("We have long recognized that a State's sovereign immunity is a personal privilege which it may waive at pleasure.  The decision to waive that immunity, however, is altogether voluntary on the part of the sovereignty." (internal quotations and citations omitted)); *Nair v. Oakland County Community Mental Health Auth.*, 443 F.3d 469, 476 (6th Cir. 2006) ("[J]ust one party (the State) may waive the defense").  Thus, the 11th Amendment gives the states a valuable option: should a class be certified, states may waive immunity and participate in a federal class action, or they may choose not to participate by asserting immunity or simply opting out.  Were Defendants' Motion granted, however, the states' freedom to choose between these options would be foreclosed.  Worse yet, it would be granted on the face of the pleadings, at a time when the states, as absent class members, are not even before the Court (as detailed below).  This outcome would help Defendants (by reducing their exposure to liability in this action), but it would hurt the states (by usurping their freedom to choose to participate as absent class members).  In short, Defendants are not proper champions of the states' 11th Amendment interests.

5

## 2.     Defendants' 11th Amendment Contention Is Not Ripe

Defendants' position also fails because the question of the states' 11th Amendment sovereign immunity is not ripe for decision.  The "key factors to consider when assessing the ripeness of a dispute are: (1) the likelihood that the harm alleged by a party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits."  *Dealer Computer Servs. v. Dub Herring Ford*, 623 F.3d 348 (6th Cir. 2010).

The states are not presently threatened with any detriment to their 11th Amendment rights.  The Supreme Court held in *Smith v. Bayer Corp.*, 131 S.Ct. 2368 (2011) that persons or entities proposed as class members are not subject to the court's jurisdiction or the preclusive effect of its judgments **until after a class is actually certified**.  *See id.,* 131 S.Ct. at 2379 (holding that absent class members are not bound by the judgment when class certification is denied, and endorsing the reasoning of Justice Scalia's dissenting opinion in *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002), that "the . . . argument that a nonnamed class member is a party to the class-action litigation *before the class is certified"* is "novel and surely erroneous.").  Therefore unless and until a class is certified, the states' 11th Amendment interests cannot be impaired.

Even at that point, any purported injury to the states' 11th Amendment interests is completely hypothetical and speculative, since the states may, should a Public Entity class be certified, <u>choose</u> to opt out of the class (or <u>choose</u> to exit by asserting their 11th Amendment immunity), or they may <u>choose</u> to participate as absent class members.  In either scenario, no injury to any state's 11th Amendment interests would occur.  In the former scenario, the class action judgment will not affect states which elect to opt out (or which are otherwise excluded).  In the latter scenario, a state's consensual choice to participate reflects no affront to that state's 11th Amendment sovereign immunity interests.[2]  When any alleged harm depends entirely on

---

[2] One struggles to imagine any choice that could be made by a state in this context that would actually present a detriment to its 11th Amendment interests.  This difficulty in

contingent future events – such as whether or not some court, person or entity will make a decision bringing the alleged detriment to fruition – the matter is not ripe.  *See, e.g., Dealer Computer Servs., Inc. v. Dub Herring Ford,* 547 F.3d 558 (6th Cir. 2008) (challenge to arbitrator's determination that class arbitration was permissible was not ripe because arbitrator had not yet certified a class); *Twin City Fire Ins. Co. v. Innovative Aftermarket Sys.*, L.P., 597 F.Supp.2d 295, 299-300 (D. Conn. 2009) (plaintiff insurers' separate declaratory judgment action not ripe because alleged detriment – the plaintiff insurers' obligation to indemnify in putative class action against insured – would not occur unless and until certification of a class including persons falling within plaintiff insurers' coverage).

Further, Defendants' argument is unripe because neither they nor any state would suffer any hardship "if judicial relief is denied at this stage in the proceedings."  *Dealer Computer*, 623 F.3d at 351.  As stated above, states face no detriment at this time because they are not yet class members and they retain choices at the point of class certification to participate or not.  Similarly, Defendants face no cognizable hardship from denial of their motion, which seeks, in effect, to deny the states any choice in the matter.

Finally, the justiciability defects[3] in Defendants' 11th Amendment sovereign immunity

_____

visualization undoubtedly arises because the essence of the states' 11th Amendment rights and prerogatives is freedom of choice itself.  Therefore, a detriment to a state's rights and prerogatives under the 11th Amendment is threatened *only* when a party, or a federal court, purports to take away that choice.  That is the objective of Defendants' motion; Plaintiffs' class action allegations were never intended to, and could not possibly, have that effect.

[3] Defendants are self-conscious of their constitutional argument's lack of justiciability.  At DB 11, in an attempt to support their assertion that "immediate dismissal" is required, Defendants cite two cases – *Angel v. Kentucky*, 314 F.3d 262, 265 (6th Cir. 2002), and *Starkey ex rel. A.B. v. Boulder County Social Servs.*, 569 F.3d 1244, 1260 (10th Cir. 2009).  Defendants contend that these cases establish that, whenever the 11th Amendment is "raised by the parties," even if none of the parties raising it is a state, state instrumentality, or an employee thereof acting under color of state authority, the court must decide the issue immediately.  But in both of those cases, <u>a state party raised the 11th Amendment issue</u>.  Moreover, neither *Angel* nor *Starkey* holds that the issue must be decided "when raised by the parties."  That language, not in the cases, was inserted by Defendants to create the impression that their position is supported.  It is not.

defense take on paramount importance here because Defendants' position is both novel and unprecedented. A "fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988); *Prater v. City of Burnside*, 289 F.3d 417, 434 (6th Cir. 2002). This principle is crucial when the constitutional issue is, as here, novel and disputed. *See Nike, Inc. v. Kasky*, 539 U.S. 654, 663-665(2003) (Stevens, J., concurring in dismissal of certiorari as improvidently granted); *Pro-Football, Inc. v. Harjo*, 2000 U.S. Dist. LEXIS 19792, (D. D.C., Dec. 11, 2000) ("The avoidance doctrine is particularly fitting in this circumstance because of the novel and disputed nature of the constitutional issues presented.")

**B.** *Walker* **Is Inapplicable and Was Incorrectly Decided**

Defendants offer a single district court opinion to support their 11th Amendment defense: *Walker v. Liggett Group, Inc.*, 982 F. Supp. 1208 (S.D. W.Va. 1997). That case is inapplicable even on its own terms, however. In *Walker*, the states themselves asserted their 11th Amendment sovereign immunity, and they did so not at the pleading stage, but instead after the district court had preliminarily granted certification of a settlement class. *Id.* at 1208 (S.D. W.Va. 1997).[4]

---

[4] Defendants also cite *Thomas v. FAG Bearings Corp.*, 50 F.3d 502, (8th Cir. 1995), *In re McKesson Governmental Entities Average Wholesale Litig.,* 767 F. Supp. 2d 263 (D. Mass. 2011), and *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 849 n.14 (9th Cir. 2004), but none of these cases decided whether the 11th Amendment required dismissal of claims asserted on behalf of states as absent class members in a Rule 23(b)(3) class action. *Thomas* was a non-class action case in which a state agency raised the state's 11th Amendment rights to argue that involuntary joinder (with no opt-out such as that which exists in every Rule 23(b)(3) class action) of a state agency in federal court was barred by the 11th Amendment. In *McKesson*, a class action in which defendants attempted to raise the states' 11th Amendment sovereign immunity to oppose certification of a class including states and state agencies, the district court expressly declined to rule on the "novel" 11th Amendment issue raised by defendants. *See McKesson*, 767 F. Supp. 2d at 271. Defendants' reliance on *Dynegy* is mystifying at best, because the 9th Circuit rejected the state's argument that its 11th Amendment immunity prevented it from being made an involuntary plaintiff in federal court through removal of an action it filed in state court, and criticized the state, concluding that "California's conception of sovereign immunity as a sword rather than a shield is unavailing." *See Dynegy*, 375 F.3d at 849.

Moreover, the *Walker* holding was incorrect as a matter of law.  As an initial matter, the *Walker* court acknowledged the novelty of the constitutional question, stating that because "[t]raditionally, the Eleventh Amendment is used as a shield, immunizing states from suits in federal court, . . . the application of the Eleventh Amendment is not readily apparent." *Walker*, 982 F. Supp. at 1210.  Plaintiffs' research has uncovered no subsequent case following *Walker*, nor any precedent, ever, in which class action defendants were permitted to pre-emptively cut off, via a motion to dismiss, the states' option to consent to jurisdiction and participate as absent class members should a class be certified.

The *Walker* court failed to consider whether Rule 23 can be construed in a manner consistent with the 11th Amendment.  "[I]t is beyond debate" that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court [must] construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988); *H.D.V. - Greektown, LLC v. City of Detroit*, 568 F.3d 609, 624 (6th Cir. 2009) ("We are . . . bound by *DeBartolo* . . . .").  This fundamental precept of constitutional avoidance applies to the construction of Rule 23.  *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 842, 845 (1999) (construing Rule 23(b)(1)(A) to "avoid[] serious constitutional concerns").  Under the cannon of constitutional avoidance, which is based on a presumption that the drafters (here, the Advisory Committee) and adopters (here, the Supreme Court itself) do not intend constitutional infirmity, *see Edward J. DeBartolo Corp.,* 485 U.S. at 575, the question becomes whether Rule 23 can be interpreted to allow for the full enjoyment by states of their rights and prerogatives under the 11th Amendment when they are proposed class members.

It can. As established above, the 11th Amendment gives each state a "personal privilege which it may waive at pleasure." *See College Sav. Bank*, 527 U.S. at 675.  A state may assert the privilege to avoid suit in federal court, or it may waive the privilege, at its pleasure, to participate in such a suit.  Rule 23 offers at least three avenues by which absent class member states may express their consent to federal court jurisdiction – (i) the mandatory "opt out" for Rule 23(b)(3)

9

classes, (ii) the broad powers created by Rule 23(d)(1) to devise procedures for the conduct of the class action to "to protect class members and fairly conduct the action," specifically including providing notice "to some or all class members" of an "opportunity to . . . otherwise come into the action," and (iii) the Court's option under Rule 23(e)(4) to require a second opportunity to "opt out" of a proposed settlement of a Rule 23(b)(3) class action.

First, Rule 23(c)(2)(B) provides that in a Rule 23(b)(3) class action – the type of class proposed in this case (*see* AC ¶ 157) – the court must provide the best practicable, clear notice to class members, "including individual notice to all members who can be identified through reasonable effort," *inter alia*, "that the court will exclude from the class any member who requests exclusion, [and] the time and manner for requesting exclusion." This "opt out" feature would require individual notice to the nine (9) states included in the damages class (*id.*), since they are readily identifiable, and provides an opportunity for each of them to decide whether to assert, or to waive, its 11th Amendment sovereign immunity, and to communicate that decision to the Court. The *Walker* court rejected the argument that the Rule 23(c)(2)(B) opt out, alone, sufficed to vindicate states' 11th Amendment rights, *Walker*, 982 F. Supp. at 1211, implicitly holding that the opt out process itself is insufficient to obtain a clear and unequivocal declaration of each state's consent to jurisdiction. This conclusion is incorrect where, as here, individual, actual opt out notice will be directly received by each relevant states' chief legal officer. Thus there is no issue of constructive notice or "constructive waiver." *Cf. College Sav. Bank*, 527 U.S. at 676-682 (rejecting the validity of constructive waivers of 11th Amendment rights).

Moreover, there are material differences between the burdens imposed by being sued as a defendant versus being included as an absent plaintiff class member. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808-813 (1985). Normally, states invoke their 11th Amendment immunity to avoid being sued as a defendant. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 119 (2d Cir. 2007) ("[H]istory gives little indication that sovereign immunity was ever intended to protect plaintiff states. Rather, it plainly understands sovereign immunity as protection from being sued." (internal quotation and citation omitted)). As absent

10

plaintiff class members, states would face none of the burdens traditionally faced by defendants. *See Shutts,* 472 U.S. at 808-810. The essential issue in *Shutts,* where the *in personam* jurisdiction of a state court over out-of-state absent class members ultimately depended on their consent,[5] is the same issue as presented here, where federal court jurisdiction over states as absent class members necessarily depends on their consent. That issue is, "how stringent the requirement for a showing of consent will be." *Shutts*, 472 U.S. at 812. *Shutts* held that opt out notice would suffice under circumstances in which many class members might be bound by less than actual notice; here, where actual notice to the states is a certainty, the reasoning of *Shutts* supports the conclusion that, contrary to the holding in *Walker*, the opt out mechanism will show actual consent sufficiently to vindicate the states' 11th Amendment rights and prerogatives.

But, as the *Walker* court failed to acknowledge, Rule 23's other provisions provide even more protection for the states. Rule 23(d)(1)(B) grants the Court broad discretionary powers to "protect class members and fairly conduct the action" by, *inter alia*, requiring "notice *to some* or all class members" (emphasis added) of "the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action," *id.,*[6] or to "deal with similar procedural matters." Fed. R. Civ. P 23(d)(1)(E).[7] Nothing prevents the Court from using its authority under Rule 23(d)(2) to

---

[5] *Shutts*, 472 U.S. at 806 ("Reduced to its essentials, petitioner's argument is that unless out-of-state plaintiffs affirmatively consent, the Kansas courts may not exert jurisdiction over their claims.")

[6] Pre-certification assent is not required, because any jurisdiction of the Court over the states will not manifest until the Court enters a judgment that would bind the class. Even if pre-certification notice were required, Rule 23(d)(2) accommodates it. *See In Re Integra Realty Res.*, 262 F.3d 1089, 1109 (10th Cir. 2001) ("[T]he decision of whether to order [pre-certification] notice and the form that such notice is to take is left to the discretion of the district court."); *Shelton v. Pargo, Inc*., 582 F.2d 1298, (4th Cir. 1978) (same)..

[7] Section 23(d)(1)(B) has been held to authorize departures from the ordinary "opt out" versus mandatory structure of Rule 23(b) class types, for example, by permitting a single class member to opt out of a normally mandatory Rule 23(b)(1)(B) class, *see County of Suffolk v. Long Island Lighting Co.*,907 F.2d 1295, 1302-1305 (2d Cir. 1990), by requiring a class-wide opt out notice in a normally mandatory Rule 23(b)(2) class action,

supplement the regular opt-out procedure with an additional process directed to obtaining the affirmative consent of each the 9 states implicated by the damages class definition, and excluding those who elect not to provide it.[8]

Third, if a settlement is proposed, Section 23(e)(4) provides the Court with discretion to require, as a condition of settlement approval, that class members be given a new opportunity to request exclusion.  If the Court believes that the states' 11th Amendment rights and prerogatives require an additional opportunity to opt-out (despite the fact that for states, actual notice to a sophisticated legal representative is a certainty), Rule 23(d)(2) provides sufficient flexibility in the settlement context as well to exclude those of the nine relevant states that do not communicate affirmative consent.

---

see Hecht v. United Collection Bureau, Inc., 691 F.3d 218, 223-224 (2d Cir. 2012); Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 165 (2d Cir. 2001), or by effectively requiring class members to opt in, or be excluded, by requiring the filing of claim forms by a specified date.  See Grace v. Detroit, 145 F.R.D. 413, 415-418 (E.D. Mich. 1992) (Rule 23(d)(2) provides authority for order excluding persons from class who failed, without good cause, to comply with notice requiring submission of timely claim form).

[8] For example, the court could identify all states that did not return an opt-out form, and direct additional notice only to such states, explaining that the Court will exclude them from the class if they do not affirmatively communicate their consent to the Court. Public Entity Plaintiffs are not suggesting that the Court certify an "opt-in class." Because the regular Rule 23(c)(2)(B) opt-out procedure would be followed for all class members, it will assure that potential class members are not excluded by failure to take affirmative action for reasons of "ignorance, timidity, [or] unfamiliarity with business or legal matters," Kern ex rel. Estate of Kern v. Siemens Corp., 393 F.3d 120, 124 (2d Cir. 2004) (citation and quotation omitted), thus avoiding the policy issues underlying the selection of an opt out instead of opt in structure for Rule 23.  See id., 393 F.3d at 124-29. This distinction between class-wide opt out and a less than class-wide process to address issues relating only to some few class members is explicitly built into the language of Rule 23(d)(2)(B)(iii), which states that additional notice may be directed to "some . . . class members" concerning "the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action."

IV.     **RULE 23 SUPPORTSPUBLIC ENTITY CLASS ACTIONS**

In addition to their novel constitutional theory concerning the states, Defendants contend that state laws addressing the authority of the chief legal officers, and sometimes the boards of public entities – states, counties, cities, towns, villages, and other local governmental entities – must be construed to disable public entities from deciding that it would be in their best interest, instead of prosecuting their own claims, to participate as an absent plaintiff class members in a class action.  For the reasons explained below, Defendants' state statutory argument should be rejected.

A.     **Defendants' Public Entity Exclusion Argument Is Not Justiciable**

Defendants admit that any rights created by their proffered state statutes and local charters are "the rights of absentee entities" [DB 2], not their own.  As demonstrated above, Defendants lack standing to assert the rights of their proposed absentee governmental entity adversaries.  Courts recognize the obvious problem with granting standing to raise third-party rights – litigants in Defendants' position "may place a slightly different, self-interested "spin" on [their] presentation," *Amato v. Wilentz*, 952 F.2d 742, 748 (3d Cir. 1991), than would the absent entities themselves.  Such "self-interested spin" is manifest here:

- Although Defendants contend that California statutes and local laws prevent California counties, cities, towns and other municipal entities from ever electing to benefit as absent plaintiff class members – even citing an 1898 California Supreme Court decision in supposed support, *see* DB at 21 and 23 (citing *Merced County v. Cook*, 52 P. 721, 723 (Cal. 1898)), they neglect to inform the Court of the 1997 California Supreme Court decision holding that California counties have capacity and authority to bring federal class actions asserting state and federal antitrust claims on behalf of similarly situated California counties.  *See Pacific Gas & Electric Co. v. County of Stanislaus*, 947 P.2d 291 (Cal.1997).  *See* discussion, *infra*.

- Defendants argue that Section 63(1) of New York's Executive Law, by stating that New York's Attorney General "shall prosecute all actions and proceedings in which the state is interested," prevents the state from ever electing to participate as an absent plaintiff class member and thereby benefiting from the efficient aggregation and resolution of claims offered by the federal class action procedure. It is unlikely that New York would agree.  For example, in *In re Fine Paper Litigation*, 632 F.2d 1081, (3d Cir. 1980), New York objected to a federal

13

antitrust class action settlement where Connecticut's original complaint had proposed a plaintiff class of "all state and local governmental purchasers of fine paper in the United States," but then settled on behalf of a class consisting only of Connecticut governmental entities.  In fact, New York was objecting to its exclusion as an absent plaintiff class member from the approved settlement class. See id., at 1087-1088.[9]

- Defendants argue that Me. Rev. Stat. tit. 5, § 191(3) makes it impossible for Maine to ever elect to benefit as an absent plaintiff class member, quoting the statute at DB 14:  "Maine – The Attorney General 'or a deputy, assistant or staff attorney shall appear for the State' and the heads of State departments and agencies 'in *all* civil actions and proceedings in which the State is a party or interested.' Me. Rev. Stat. tit. 5, § 191(3) (emphasis added)."   However, the statute actually provides: "The Attorney General or a deputy, assistant or staff attorney shall appear for the State, the head of any state department, the head of any state institution and agencies of the State in all civil actions and proceedings in which the State is a party or interested, or in which the official acts and doings of the officers are called into question, **in all the courts of the State and in those actions and proceedings before any other tribunal when requested by the Governor or by the Legislature or either House of the Legislature.**" (bold emphasis added to identify statutory language hidden by Defendants' truncated quotation).  The mandatory appearance language applies to civil actions "in all the courts of the State," whereas with respect to civil actions in "any other tribunal," such as, for example, a United States District Court, the Maine Attorney General's appearance is mandatory only if requested by the Governor or the legislature.  *See* discussion, *infra*.  One may legitimately doubt that the absent entities themselves would employ Defendants' "hide the ball" method of statutory advocacy.

Defendants are attempting to "spin" a collection of routine and ubiquitous state laws addressing the authority of public legal officers – which Defendants say are "readily found" [DB 20] – into "roadblocks" [*id.*] excluding public entities from the benefits of Rule 23(b)(3) class actions. The Public Entities would not likely advocate incapacitating themselves in this way.

Furthermore, any issues that might be raised with respect to such statutes are not now – and may never be – ripe for adjudication.  Since class certification may or may not be granted, no

---

[9] The Third Circuit reversed the settlement's approval, holding that the settlement could not dismiss defendants from the case until the district court addressed certification of a nation-wide class of government entities, including states, as originally proposed by Connecticut.  *See also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 342-343 (N.D. Ga.1993) (noting in class action settlement approval opinion "objections filed by states . . . to the exclusion of governmental entities from the class definition.").

absent class member public entities, and thus no such statutes, are presently before the Court, and they may never be.  *See Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 560-563 (6th Cir. 2008) (challenge to arbitrator's determination that class arbitration was permissible was not ripe because arbitrator had not yet certified a class).

> **B.      The Supreme Court's Decision in *Shady Grove* Forecloses**
>
> **Defendants' Public Entity Exclusion Argument**

Defendants argue that the state laws they proffer make public entity class actions impossible.[10]  Even if these state laws could be construed in the manner suggested by Defendants – and, as demonstrated below, they cannot – Defendants' public entity exclusion argument is merely a variant of the contention that one or more state statutes determine whether certain types of claims are "eligible, in the first place," for class action treatment in federal court.  This contention was squarely rejected in *Shady Grove*, in which the Supreme Court held that Rule 23 permitted a federal court class action on a New York state law claim for statutory interest, despite a New York statute that precluded class actions that seek penalties or statutory minimum damages:

> The Second Circuit believed that [the New York statute] and Rule 23 do not conflict because they address different issues. Rule 23, it said, concerns only the criteria for determining whether a given class can and should be certified; [the New York statute], on the other hand, addresses an antecedent question: whether the particular type of claim is eligible for class treatment in the first place – a question on which Rule 23 is silent. *See* 549 F.3d, at 143-144 . . . .
>
> We disagree. . . .  There is no reason . . . to read Rule 23 as addressing only whether claims made eligible for class treatment by some other law should be certified as class actions. Allstate asserts that Rule 23 neither explicitly nor implicitly empowers a federal court "to certify a class in each and every case" where the Rule's criteria are met. <u>But that is exactly what Rule 23 does</u>: It says

---

[10] Defendants assert that Plaintiffs must allege in their complaint that they have received authorizations from thousands of proposed public entity class members, but in the same breath admit that such a herculean task is impossible "under the rubric of a class action." (DB at 12).  Plainly, Defendants' concern is not about deficiencies in Plaintiffs' class action pleadings, but the assertion of state laws that, according to Defendants, make public entity class actions impossible.

that if the prescribed preconditions are satisfied "[a] class action may be maintained" (emphasis added) – not "a class action may be permitted." Courts do not maintain actions; litigants do. The discretion suggested by Rule 23's "may" is discretion residing in the plaintiff: He may bring his claim in a class action if he wishes. And like the rest of the Federal Rules of Civil Procedure, Rule 23 automatically applies "in all civil actions and proceedings in the United States district courts," Fed. Rule Civ. Proc. 1. See Califano v. Yamasaki, 442 U.S. 682, 699-700, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979).

*Shady Grove*, 559 U.S. at 399-400 (majority opinion).  Here, Defendants contend that because of state statutes and local laws, civil claims owned by nonparty public entities are not eligible for class adjudication in a federal court class action.[11]   Rule 23 makes no distinction between the types of persons – individuals, associations, public entities or private entities – who may be class members, however, so long as plaintiff demonstrates that the requirements of Rule 23 are satisfied.  Instead, "Rule 23 provides a one-size-fits-all formula for deciding the class-action question . . . .," *id.*, 559 U.S. at 399 (majority opinion), creating "a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Id.*, 559 U.S. at 398 (majority opinion).

Nor do the state statutes relied upon by Defendants establish substantive state law rights or remedies that application of Rule 23 would alter.  Justice Stevens' concurring opinion in *Shady Grove* – which is binding on subordinate federal courts[12] – held that in determining the

---

[11] Defendants may argue that *Shady Grove* is inapplicable because the state statutes they raise "address a different question" than does Rule 23, and therefore may be applied by this Court.  Such an argument would be fallacious, given that Defendants urge these statutes as the basis for striking Public Entity Plaintiffs' class allegations in federal court. The very nature of Defendants' motion argues that these statutes answer the question, as a matter of law, of whether Public Entity Plaintiffs' action may be maintained as a Rule 23 class action, and urges the Court to take action based upon the answer to that question.

[12] Justice Stevens was the fifth vote in favor of reversal, making his concurring opinion necessary to the Court's judgment. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193 (1977); *see also United States v. Cundiff*, 555 F.3d 200, 209 (6th Cir. 2009).  Justice Stevens' *Shady Grove* concurring opinion binds subordinate federal courts. *See McKinney v. Bayer*

validity of Rule 23's application under the Rules Enabling Act, the Court must consider whether the state law or laws at issue are "substantive" in the limited sense of being part of the "State's definition of its own rights or remedies." *See Shady Grove*, 559 U.S. at 418, *citing Sibbach v. Wilson & Co.*, 312 U.S. 1, 13-14 (1941) (reasoning that "the phrase 'substantive right'" embraces only those state rights that are sought to be enforced in the judicial proceedings). Justice Steven's resolution of this issue emphasized the fact that the New York statute "expressly and unambiguously applie[d] not only to claims based on New York law but also to claims based on federal law or the law of any other State," *id.*, 559 U.S. at 432, making it "hard to see how [the New York statute] could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies." *Id. Compare In re Auto. Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 136404 at *218-219, 226( E.D. Mich., Sept. 25, 2014) (applying state statutory class action prohibitions found in Illinois and South Carolina statutes defining cause of action; rejecting Montana state statutory class action prohibition because "the Montana statute addresses class actions only in the context of the procedures available to enforce the right in state court" and "does not alter the substantive scope of the right to relief").

Here, as in *Shady Grove*, the statutes and local laws at issue apply neither to a specific substantive claim, *see Auto Parts, supra*, nor exclusively to the enacting state's substantive causes of action generally, but rather apply equally to federal law and foreign state law claims. *See Shady Grove*, 559 U.S. at 432. These statutes therefore are not part of the enacting states' scheme of defining state law substantive rights and remedies. These statutes therefore do not cross the line Justice Stevens drew in *Shady Grove*: they are not part of the enacting states' scheme of defining state law substantive rights of action and remedies. Instead, even as Defendants would have the Court construe them, they "govern[] only the manner and means by which the litigants' rights are enforced," *Shady Grove*, 559 U.S. at 407, by prescribing *steps that must be* taken – for example, the procedural matter of who must appear as counsel of record – for

---

*Corp.*, 744 F. Supp. 2d 733, 747 (N.D. Ohio 2010); *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642, 660-1 (E.D. Mich. 2011).

public entities to litigate substantive claims regardless of their state, federal, or foreign state origin.  Like Rule 23, these statutes "leave[] the parties' legal rights and duties intact and the rules of decision unchanged."  *Shady Grove*, 559 U.S. at 408.  Under *Shady Grove*, therefore, these state statutes must yield to Rule 23 in the determination of whether Public Entity Plaintiffs' proposed class action may be maintained.

### C.    Classes of Governmental Entities Have Been a Feature of Rule 23 Practice for Decades

Although Defendants frame their rhetoric in terms of "usurpation" of public entity legal officer prerogatives, Plaintiffs propose nothing of the sort.  Should a Public Entities class be certified, Rule 23 gives absent plaintiff class members a choice; each public entity legal officer will receive notice and decide whether to opt out and bring an individual action, or alternatively that the entity's best interests would be served by participating in the class action.  *See* Fed. R. Civ. P. 23(c)(2)(B)(v).  The notice must also state that "a class member may enter an appearance through an attorney if the member so desires," Fed. R. Civ. P. 23(c)(2)(B)(iv), so it accommodates any instance in which a public entity legal officer believes that a personal appearance would serve her client's interests.

Moreover, Defendants suggest Plaintiffs are trying something novel here by proposing classes of state and local governmental entities.  Not true.  In fact, public entities pioneered the Rule 23(b)(3) class action device.  *See e.g., Philadelphia Elec. Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 462 (E.D. Pa. 1968) (antitrust litigation class "consisting of . . . (1) all governmental entities . . . within the territory comprising the Eastern District of Pennsylvania; (2) all state governments, and all governmental entities having state-wide jurisdiction . . . ; and (3) all cities in the United States having a population, as of the 1960 Federal census, in excess of 50,000, and all school districts and public building authorities within such cities.");[13]   The Rule

---

[13] *See also, W. Va. v. Chas. Pfizer & Co.,* 314 F.Supp. 710, 721-725 (S.D.N.Y. 1970) (settlement involved "temporary national class action" from which states could opt out, city and county government plaintiffs maintained class actions on behalf of consumers within their territories); *aff'd,* 440 F.2d 1079 (2d Cir. N.Y. 1971); *Eisen v. Carlisle &*

18

also has well served federal courts and litigants over decades of public entity class actions.  *See San Francisco Health Plan v. McKesson Corp. (In re McKesson Governmental Entities Average Wholesale Litig.)*, 767 F.Supp.2d 263, 266 (D. Mass. 2011) (certifying liability class of "[a]ll non-federal and non-state governmental entities in the United States and its Territories that paid for Marked-Up Drugs based on AWP"), as well as the numerous examples of recent public entity class actions discussed at immediately below.[14]  Although there is nothing novel about defendants trying to dismantle the Rule 23 class action device, it is Defendants' substantive position that is novel here – that public entity class actions are impossible.  They are not.  District Courts within the Sixth Circuit and other federal circuits have frequently certified classes consisting of public entities such as cities, towns and counties.  For example, in *City of Goodlettsville v. Priceline.com, Inc*., 267 F.R.D. 523, (M.D. Tenn. 2010), the District Court

---

*Jacquelin*, 479 F.2d 1005, 1012 (2d Cir. 1973) ("Judge Wyatt's extraordinary feat of judicial administration in carrying out the terms of the one hundred million dollar settlement in [*W.Va. v. Pfizer*] deserves all the praise it has received."), *rev'd on other grounds, Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 ( 1974); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 267,  (S.D.N.Y. 1971) (public entity litigation classes certified for non-settling states); *In re Fine Paper Litigation*, 632 F.2d at 1087-1088 (Connecticut's complaint proposed a plaintiff class of "all state and local governmental purchasers of fine paper in the United States;" approval ofproposed settlement on behalf only of Connecticut governmental entities reversed for failure to consider nationwide public entity class); *California v. ARC America Corp.*, 490 U.S. 93, 97 (1989) ("States of Alabama, Arizona, California, and Minnesota, brought suit in the appropriate federal courts on their own behalf and on behalf of classes of all governmental entities within each State, excluding the Federal Government")), *rev'g In re Cement & Concrete Antitrust Litig.,* 817 F.2d 1435, 1438 (9th Cir. 1987).

[14] For an example of recent public entity settlement classes, *see All Indirect Purchaser Actions v. Infineon Techs. AG (In re Dynamic Random Access Memory (Dram) Antitrust Litig.)*, 2014 U.S. Dist. LEXIS 89622 at *81-83 (N.D. Cal. June 27, 2014)(certifying a multistate public entity settlement class and a separate, more limited public entity settlement class).  *See also In re Skelaxin Metaxalone Antitrust Litig.*, 2014 U.S. Dist. LEXIS 60214 at* 11-12 (E.D. Tenn. Apr. 30, 2014) (certifying nationwide settlement class excluding "all federal governmental entities," but not excluding state and local government entities); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.,* 2014 U.S. Dist. LEXIS 21504 at* 11 (E.D. Pa. Feb. 18, 2014) (preliminarily approving nationwide settlement class excluding "federal government entities" but not excluding state and local government entities).

19

granted plaintiff City of Goodlettsville's motion to certify a class of "all Tennessee municipalities and counties that impose hotel occupancy taxes." *Id.,* 267 F.R.D. at 527, 536; *see also County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, (S.D. Fla. Mar. 15, 2010) (certifying class of 59 Florida counties).[15] As Judge Trauger held in *City of Goodlettsville*, the opportunity for classwide determination of common issues made class adjudication "vastly superior [to] . . . [f]orcing the municipalities to litigate these issues individually[, which] would be a waste of judicial resources and a waste of the parties' resources." *City of Goodlettsville*, 267 F.R.D. at 534.  Moreover, Judge Trauger held that Rule 23's opt out feature provided ample protection for public entities, stating that "[i]f particular class members nevertheless wish to litigate their cases individually, they may simply opt out of the class," *id.,* 267 F.R.D. at 535, and finding that "county and municipal governments are better equipped to assess their rights and to evaluate the consequences of opting out than the lay individuals who comprise most classes." *Id.* (internal quotation and citation omitted); *County of Monroe*, 265 F.R.D. at 627 n.15 (same).

> ### D.    Even Independent of *Shady Grove* and Decades of Rule 23 Practice, Defendants' Public Entity Exclusion Argument Lacks Merit

Application of *Shady Grove* obviates any need for the Court to engage in a state-by-state or city-by-city construction of the statutes and charters Defendants raise, let alone at the pleading stage.  Any such analysis simply demonstrates that Defendants' position is groundless.

> #### 1.    Defendants' Contentions Regarding Local Public Entities Are Unsupported and Ignore Controlling State Supreme Court Authority

None of the statutes or cases from relevant states cited by Defendants supports their position.  In fact, although their presentation obscures it, merely a single case cited by

---

[15] *See also City of Gallup, N.M. v. Hotels.com*, L.P., 2009 U.S. Dist. LEXIS 126818 at *2, 15 (D.N.M. July 7, 2009) (class of "[a]ll New Mexico taxing authorities"); *City of San Antonio v. Hotels.com*, 2008 U.S. Dist. LEXIS 58793, at *17 (W.D. Tex. May 27, 2008) (class of Texas cities).

Defendants from a state not implicated[16] by Plaintiffs' proposed class actionreached the result

Defendants desire: *Dallas County v. Merscorp, Inc.,* 2012 U.S. Dist. LEXIS 176533 (N.D. Tex.,

Dec. 13, 2012).  In *Dallas County*, the district court granted defendants' motion to strike class

allegations on behalf of similarly situated Texas counties, stating that the Fifth Circuit panel

decision in *Ackal v. Centennial Beauregard Cellular* LLC, 700 F.3d 212 (5th Cir. 2012)  was

"controlling in the present case."  *Dallas County*, at * 21.[17]  Based on *Ackal*, *Dallas County* (1)

concluded that state statutes concerning public entity retention of private counsel somehow

altered the meaning and operation of Rule 23 in federal court, while failing to recognize and

address the import of *Shady Grove*, and (2) concluded, without precedent or reasoning, that such

---

[16] Defendants' reliance on to *County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 831 N.E.2d 563 (Ill. 2005) is likewise inapposite.  Even if Illinois law were relevant, Illinois has long recognized public entity class actions.  *See, e.g., Pawnee v. Johnson*, 469 N.E.2d 1365 (Ill. 1984) (class action "on behalf of all Illinois municipal corporations, similarly situated").

[17] Remarkably, Defendants do not cite *Ackal* – the only federal Court of Appeals opinion ever to rule that a federal class action may not be maintained on behalf of public entities due to purported requirements of state law.  Defendants' decision not to rely on *Ackal* is understandable.  *Ackal* was driven completely by the *Ackal* plaintiffs' concession of two pivotal legal issues:  that the Louisiana statute's requirements (1) applied to absent plaintiff class member participation and (2) constituted "statutory requirements for certification" in federal court, and that plaintiffs would comply with such purported requirements for each and every class member "upon completion of the appellate process."  *See Ackal*, 700 F.3d at 218.
The first concession was incorrect because absent plaintiff class members do not contract with, employ, or retain class counsel as their own, and any compensation paid to class counsel via court approved fee award does not come from taxpayer money. *See* n.21, *infra.* The second concession was incorrect because it is directly contrary to the Supreme Court's holding in *Shady Grove*, *supra*, which was apparently not cited or argued to the Fifth Circuit panel.  Certainly, the *Ackal* decision never mentions it.  Because it was based on pivotal legal concessions, *Ackal* would not be binding on subsequent Fifth Circuit panels via *stare decisis.  See Wetherill v. Geren*, 616 F.3d 789, 795 n.8 (8th Cir. 2010) (decision of an issue not actually disputed, but instead conceded, lacks *stare decisis* effect); *United States v. Garcia-Caraveo*, 586 F.3d 1230,1234 and n.2 (10th Cir. 2009) (same). For the same reason, *Ackal* lacks persuasive force here, and all the more so since there are no such concessions here.

statutes should be extended to apply to proposed absent plaintiff class members. *See id*., at *25-31.

The most remarkable thing about *Dallas County*, however, is that in order to follow *Ackal*, the district court discarded directly contrary Texas precedent.[18] Texas appellate courts have squarely rejected Defendants' public entity exclusion argument, instead holding, similar to Judge Trauger's Rule 23 holding in *City of Goodlettsville, supra*, that Texas Rule 42's provisions – including an opt out process identical to that of Federal Rule 23 – provides properly for the protection of absent municipalities' interests.[19] The Texas appellate cases culminate in the Texas Supreme Court's decision in *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750 (Tex. 2003), upholding a class action on behalf of eighty south Texas cities. The Texas Supreme Court held that (1) Texas "cities could authorize their attorneys to opt out of [Rule 42 class action] litigation without formal action in an open meeting," *id.*, 109 S.W.3d at 752; *see also id.*, at 757-758, and (2) that a Texas city that fails to file an opt out form is bound by a class settlement. *See id.,* 109 S.W.3d at 758. The Texas approach to Defendants' public entity

---

[18] The *Dallas County* opinion's treatment distinguishing the Texas cases is not persuasive. According to the *Dallas County* court, the Texas state court cases were "not controlling" because they involved cities, not counties. *Id.* at *33. However, the legal differences between Texas cities and counties noted by the opinion provided no basis to conclude that the county-related statutes at issue should be extended to cover absent plaintiff class member participation. The *Dallas County* opinion also concluded that the Texas cases need not be applied because they were decided under Texas' class action rule instead of Rule 23, *see id.* at * 35, but the district court offered no discussion of any legally material differences between Texas Rule 42 and Fed. R. Civ. P. 23 or the bodies of case law interpreting them.

[19] *See Sw. Bell Tel. Co. v. City of Port Arthur*, 1993 WL 13013186 at *3 (Tex. App. – Beaumont June 3, 1993, no writ) (defendant's "position overlooks the reality of TEX.R. CIV. P. 42(c)(2), *i.e.*, the ability to opt out of the class or to intervene in its own right"); *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 613 (Tex. App. Corpus Christi 1998) (rejecting defendants' non-delegation argument, holding that with adequate notice, the Rule 42 opt out process "will insure the appropriate actions are taken in determining whether to . . . stay in or opt-out . . . ."); *Entex v. City of Pearland*, 990 S.W.2d 904, 911, 913 (Tex. App. Houston 14th Dist. 1999) ("[T]he governing body of a municipality may choose the procedure by which it litigates issues involving municipal ordinances, including participation in a class action suit").

exclusion argument represents a pragmatic result fully consistent with *City of Goodlettsville* and the numerous other federal district court decisions granting certification of public entity classes cited *supra*.  It is appropriate to rely upon Rule 23's opt out requirement to protect the interests of absent municipal plaintiff class members, which "are better equipped to assess their rights and to evaluate the consequences of opting out than the lay individuals who comprise most classes." *City of Goodlettsville*, 267 F.R.D. at 535; *County of Monroe*, 265 F.R.D. at 627 n.15 (same).  In such an action, the Court may properly have faith that public entity governance formalities are observed, *see Entex*, 990 S.W.2d at 913, just as the Court may typically act in reliance on the implicit or explicit representations of authority made by counsel for any natural person or entity party.  *See, e.g., County of Ulster v. Ulloa*, 2011 U.S. Dist. LEXIS 19851 at *6-7 (N.D.N.Y., Mar. 1, 2011).

Moreover, the Supreme Court of California, one of the states Defendants say represents "the norm," [DB 22] has specifically held that California public entities (counties) may bring federal class actions on behalf of other California public entities.  *See County of Stanislaus*, 947 P.2d 291(1997), discussed *supra*.  The California approach is consistent with that of the Texas Supreme Court, *see City of San Benito*, 109 S.W.3d 750 (Tex. 2003), discussed *supra*.  These state Supreme Courts apply a commonsense, pragmatic approach, recognizing that public entities are no different than other entities when it comes to initiating class actions or participating in them as plaintiff class members.  This approach is consistent with federal procedural law, *see Shady Grove, supra,* and permits state public entities to continue, as plaintiff class members, to benefit from the efficient aggregation and resolution of claims offered by the Rule 23(b)(3) class actions.  *See, e.g., Infineon*, 2014 U.S. Dist. LEXIS 89622 at *81-83.[20]

---

[20] Defendants argue that there is "no prospect" that the Public Entity class action can ever be settled because "a court adjudicating a class action cannot predetermine the *res judicata* effect of its own judgment," DB at 31 (quoting *Pelt v. Utah*, 539 F.3d 1271, 1285 (10th Cir. 2008)).  Of course, that well-settled legal rule is a truism that applies not only to every class action, but to every civil action.  The procedures established by Rule 23 are designed to assure that the due process requirements underpinning personal jurisdiction to bind plaintiff class members – adequacy of representation and

Oblivious to history and relevant precedent, and even inexplicably ignoring controlling state Supreme Court precedent, Defendants contend that specific state laws addressing the authority of local public entity legal officers (and, in some cases, public entity boards) make public entity class actions impossible. [21]  "In construing questions of state law, . . .[i]f the state's

---

notice/opportunity to be heard – are satisfied, and there is no real-world (as opposed to rhetorical or theoretical) reason to think that settlements cannot be reached in Plaintiffs' proposed class action.  In fact, one of the Defense firms (O'Melveny & Myers LLP) that signed Defendants' present motion represented settling defendant NEC in connection with the indirect purchaser settlement in the DRAM antitrust litigation.  *See Infineon*, 2014 U.S. Dist. LEXIS 89622 at *39, 81.  As in any class action, settlements can be reached here if the parties agree, and the Court approves.

[21] Defendants also suggest that statutes or local laws addressing the employment or retention of private counsel make it impossible for public entities to be "represented" by private class counsel. Under Rule 23, however, absent class members do not contract with, employ, or retain class counsel as their own.  Class counsel is not compensated based on any contract or agreement with any absent class member, but rather by court-approved fee award, and any compensation paid to class counsel pursuant to such a fee award does not come from taxpayer money.  *See Shutts*, 472 U.S. at 809-810 (in a class action, absent plaintiff class members "need not hire counsel or appear;" instead, "[t]he court and named plaintiffs protect [their] interests."); 2002 Task Force Report on Selection of Class Counsel, 208 FRD 340, 346-348 (Jan. 15, 2002) ("[T]he ordinary attorney-client relationship does not exist between each class member and class counsel.); *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("The fees available under a fee-shifting statute are part of the plaintiff's recovery and are not dependent upon any explicit fee arrangements between the plaintiffs and their counsel . . . . Common fund fees are essentially an equitable substitute for private fee agreements . . . ."); *Philip Morris Inc. v. Glendening*, 709 A.2d 1230, 1240-41 (Md. 1998) (private counsel fee paid from tobacco litigation recovery did not involve appropriation of public money because fee never entered state treasury and was not required to); *Conant v. Robins, Kaplan, Miller & Ciresi*, 603 N.W.2d 143, 149 (Minn. App. 1999) (same);  **_Moreover,_** the purpose of statutes concerning public entity retention of private counsel is to protect the public fisc.  *See, e.g., Corning v. Laurel Hollow*, 48 N.Y.2d 348, 352 (N.Y.1979); *Harvey v. County of Butte,* 203 Cal. App. 3d 714, 726 (Cal. App. 3d Dist.1988).  It would be nonsensical to construe such statutes to disable public entities from plaintiff class membership, since Rule 23(b)(3) class actions permit the efficient aggregation and resolution of claims **_without spending taxpayer money_**.  *Cf. State v. Abbott Labs*., 829 N.W.2d 753, 767 (Wis. Ct. App.2013) (non-class action: "It would be nonsensical to interpret § 165.25(1m) as prohibiting the State from entering into a contract such as it did here, where litigation expenses which would normally be paid for with taxpayer dollars are instead paid for by special counsel who agrees to recover the expense only from defendants through an award of costs.").

highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999); *United States v. Simpson*, 520 F.3d 531, 535 (6th Cir. 2008) ("When there is no state law construing a state statute, a federal court must predict how the state's highest court would interpret the statute.")  Defendants' Motion thus asks the Court to predict whether each relevant state's highest court would construe each state statute or charter they invoke to deprive that state and its public entities of the option of ever being an absent plaintiff class member, and thereby benefitting from the efficient aggregation and resolution of claims offered by a Rule 23(b)(3) class action.  The answer to that question is certainly no.

Defendants frame their statutory arguments to suggest that Plaintiffs' proposed governmental entity class action represents an affront to these entities' sovereignty.  That is incorrect.  The claims asserted by Plaintiffs, and proposed to be asserted on behalf of plaintiff class members, are strictly limited to seeking damages for "injury to their business or property."  When a public entity sues for injuries to its "business or property" under an antitrust statute, the public entity is just like any other entity civil claimant: no sovereignty interests are implicated.  *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264-266 (1972) (suit under antitrust statute for "injury to business or property" implicates neither a state's sovereign interests in criminal or civil law enforcement nor its "quasi-sovereign" interest in the well-being of its economy or the welfare of its citizens, but rather seeks redress solely for injury to the state's proprietary or commercial capacity).  Thus, as the California Supreme Court stated when it held, in *Pacific Gas & Electric Co. v. County of Stanislaus*, 947 P.2d 291(Cal.1997), that California counties have both capacity and authority to bring class actions in federal court under the Cartwright Act on behalf of themselves and other counties similarly situated, "Counties that have been injured by price-fixing . . .  are no different from other persons or businesses that have been injured by such conduct," *id.* at 300, and "a county enjoys the same powers as any other corporate entity in seeking damages for injuries suffered."  *Id.* at 301.  None of Defendants' proffered state laws address class actions, and none have ever been construed by any of those states' appellate courts

25

to foreclose public entity participation as absent plaintiff class members.

**California.** Defendants proffer § 25203 of California's Government Code (county board of supervisors controls and directs litigation to which county "is a party" and may "employ counsel to assist the district attorney, county counsel, or other counsel for the county . . . in the conduct of such actions" (emphasis added) upon a two-thirds board approval) and cite a single California Supreme Court case from 1898, *Merced County v. Cook*, 52 P. 721, 723 (Cal. 1898), in support of their argument that failure to dismiss Plaintiffs class allegations immediately would "unlawfully deprive" official public entity counsel of the duties for which they were elected. Inexplicably, Defendants failed to apprise the Court of the California Supreme Court's 1997 holding in *Pacific Gas & Electric Co. v. County of Stanislaus*, 947 P.2d 291(Cal.1997), discussed above that ***California counties have both capacity and authority to bring class actions in federal court.***

For cities and municipalities, Defendants proffer statements from the charters of three cities [DB 21 and ns.17-19] to the effect that the city attorney shall "act as counsel," "represent" or "prosecute" with respect to civil actions. Defendants have offered no cases construing any of the proffered charters, and none provide, as Defendants contend, that "only the duly appointed chief legal officers of those entities may represent them in civil litigation." [DB 21]. The California Supreme Court's decision in *County of Stanislaus*, *supra,* provides the best indication of whether that court would construe Defendants' proffered city charters to disable each relevant city from plaintiff class participation. It would not, because public entities enjoy "the same powers as any other corporate entity in seeking damages for injuries suffered." *Id.*, 947 P.2d at 301.[22]

---

[22] California and federal courts have recognized class actions on behalf of California public entities. *See e.g., County of Alameda v. Pacific Gas & Electric Co.*, 60 Cal. Rptr. 2d 187 (Cal. App. 6th Dist.1997) (2 counties serve as class reps for class of 49 counties; private counsel represents named plaintiffs and class); *City of Santa Cruz v. Pac. Gas & Elec. Co*., 99 Cal. Rptr. 2d 198 (Cal. App. 6th Dist. 2000) (city brings class action on behalf of class of California cities; private counsel represents named plaintiff and class); *All Indirect Purchaser Actions v. Infineon Techs. AG (In re Dynamic Random Access*

**New York.** With respect to counties, Defendants proffer N.Y. County Law §§ 500-501, for the proposition that the County Attorney "shall prosecute and defend all civil actions and proceedings brought by or against the county," and cite *County of Sullivan v. Thompson*, 471 N.Y.S.2d 399 (N.Y. App. Div. 3d Dep't 1984), which holds that if the County Attorney initiates "an independent lawsuit" on the county's behalf without board authorization, that independent lawsuit is properly dismissed. *Sullivan* – not a class action – however does hold that "[t]he County Attorney's relationship with the county is akin to that of any attorney with a private client," thus indicating that the County Attorney may provide advice and representation to the county in connection with a class action opt out notice, as may "any attorney with a private client." *Id. Cf. County of Stanislaus*, 947 P.2d at 301 ("a county enjoys the same powers as any other corporate entity in seeking damages for injuries suffered."); *City of San Benito*, 109 S.W.3d at 752 ("cities could authorize their attorneys to opt out of [class action] litigation without formal action in an open meeting").

With respect to towns, Defendants proffer N.Y. Town Law § 65 and *Town of Claverack v. Brew*, 716 N.Y.S.2d 748, 749 (N.Y. App. Div. 2000) for the proposition that towns are disabled from ever benefitting as absent plaintiff class members. Neither even remotely supports Defendants' argument. *Town of Claverack* simply held, like *County of Sullivan*, that an independent action brought by the town attorney without board authorization may be dismissed. N.Y. Second Class Cities Law § 201, cited by Defendants, simply empowers the corporation counsel as the legal adviser of the common council and states that corporation counsel "shall appear for and protect the rights and interests of the city in all actions, suits and proceedings

---

*Memory (Dram) Antitrust Litig.)*, 2014 U.S. Dist. LEXIS 89622 at *81-83 (N.D. Cal. June 27, 2014)(certifying two indirect government purchaser settlement classes, including one consisting of "[a]ll state government entities, all political subdivisions and all public colleges and universities in Class States Alaska, Delaware, Ohio and Pennsylvania, all political subdivisions in New Mexico and all political subdivisions, the University of California and the State Bar of California in Class State California").

brought by … it …."[23]  Similarly, the charter of New York City, stating that corporation counsel is its chief legal officer, does not suggest in any way that New York City is thereby disabled from benefitting as an absent plaintiff class member.  Defendants offer no New York appellate decisions construing any of their proffered New York statutes and local laws to prevent New York public entities from benefitting as absent plaintiff class members.  To the contrary, New York courts have recognized public entity class actions.  *See State v. Philip Morris, Inc.*, 763 N.Y.S.2d 32 (N.Y. App. Div. 1st Dep't 2003) (class consisting of state and counties).

In fact, federal courts have also long recognized class actions by and on behalf of New York public entities.  *See, e.g., New York v. GM Corp.*, 60 F.R.D. 393, (S.D.N.Y. 1973) (granting class certification where New York City brought antitrust action on behalf of "all non-federal governmental units and instrumentalities in the United States which have purchased or have contributed to the purchase of city buses or bus parts"), *rev'd on other grounds, General Motors Corp. v. New York*, 501 F.2d 639 (2d Cir. 1974); *Town of New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38 (S.D.N.Y. 1990) (granting certification for plaintiff Town of New Castle to maintain class action on behalf of class consisting of  the "County of Westchester and all cities, towns, villages and other local governmental agencies").

**North Carolina.** For counties, N.C. Gen. Stat. § 153A-114 states in its entirety: "The board of commissioners shall appoint a county attorney to serve at its pleasure and to be its legal adviser."  For cities and towns, N.C. Gen. Stat. § 160A-173 states in its entirety: "The council shall appoint a city attorney to serve at its pleasure and to be its legal adviser."  These provisions do not imply, much less establish exclusivity.  Defendants also proffer three city charters, see DB 21-22, with no cases construing them. Two of these charters state the authority of the city attorney with respect to suits "for the town." None of them address class actions, and none purport to restrict the relevant city or town's ability to benefit as a plaintiff class member.

---

[23] Defendants also suggest that this statute places limitations on a city's employment of private counsel; however, as demonstrated *supra*, n.21, absent plaintiff class members do not employ class counsel, so this aspect of Section 201 is not relevant here.

Defendants cite no cases construing these statutes and charters.

**Michigan.**  For counties, Defendants argue that Mich. Comp. Laws §§ 45.563(e) 49.71 and 49.153 provide that "[a] Michigan county may participate in civil litigation only if it is represented by its 'prosecuting attorney' or 'corporation counsel.'" [DB 19]  These statutes neither say nor imply anything of the sort,[24] and Defendants cite no Michigan appellate decision construing any of these statutes to disable Michigan counties from benefitting as absent plaintiff class members.[25]  For cities and other municipalities, Defendants cite Mich. Comp. Laws § 87.20 (applicable to municipalities that have not adopted a home rule charter), which states that the city attorney "shall act as the attorney and solicitor for the corporation in all legal proceedings in which the corporation is interested," and the City of Dearborn Heights charter, which states that Corporation Counsel "shall prosecute and defend, in the name of the City, all cases in all courts and before all legally constituted tribunals whenever the City is a party thereto."  Defendants offer not a single case construing these provisions, much less a state appellate court decision

---

[24] Section 45.563(e) states in its entirety that "The department of corporation counsel if adopted shall perform as provided by law all civil law functions and provide property acquisition services for the county as provided by law."  Section 49.153 says the "prosecuting attorney" "shall" appear in civil matters, but by its terms this statute is only applicable with respect to proceedings "in all the courts of the county." (emphasis added).  Thus it does not appear to apply to actions in federal court.  Section 45.71 states that the county board can resolve to "employ" an attorney to represent the county in civil matters if it finds that the county prosecuting attorney is unable to properly represent the county.  Nothing in these statutes suggests that a Michigan county cannot be, and benefit as, an absent plaintiff class member.

[25] Defendants proffer *Wayne County Prosecuting Att'y v. Wayne County Bd. of Comm'rs*, 205 N.W.2d 27, 32, 35 (Mich. App. 1972), but that case simply upholds the county board's power to employ an attorney to represent the county in civil matters.  If anything, *Wayne County* suggests that Michigan counties are empowered to act in a pragmatic way concerning civil matters, which would include electing to benefit as an absent plaintiff class member where that course makes sense.  Defendants also cite *Bay County Exec. v. Bay County Bd. of Comm'rs*, 443 N.W.2d 168, 172 (Mich. App. 1989), but that case is inapposite; it holds that the county board could not eliminate the office of County Corporation Counsel, but neither says nor implies anything about class actions.

29

construing them to disable public entities from plaintiff class member participation.[26]  The likelihood that Michigan's highest court would construe any of the statutes and local laws proffered by Defendants to disable Michigan's public entities from plaintiff class member participation is extremely remote, as Michigan has long recognized public entity class actions. *See, e.g., Grand Traverse County v. State,* 538 N.W.2d 1, 3 (Mich. 1995) (class action by eight Michigan counties on behalf of class consisting of "76 counties, 46 cities, 11 townships, and one village"); *Plymouth v. Detroit*, 377 N.W.2d 689, 692 n.7 (Mich. 1985) (plaintiff cities and county utility authority brought class action on behalf of "municipalities, cities, towns and townships, and other public agencies and/or subdivisions similarly situated.")

**Other states.** Defendants have proffered no statutes or local laws of Arizona, Iowa, Maine, Maryland, Minnesota, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, South Dakota, Wisconsin, or West Virginia, in support of their argument that counties, cities, towns, and other municipal entities in these states are disabled by an applicable state or local law from participation as a plaintiff class member.  Nor do they cite any state appellate decision to support their contention.[27]  Instead, they argue only that the states for which they do proffer allegedly relevant state statutes or local laws "are the norm."  As with California, Defendants

---

[26] Defendants cite additional Michigan city charters at DB 20 n.15, but like all of the other local laws relied upon by Defendants, none addresses class actions and Defendants have cited no cases construing them to disable the cities from benefitting as absent plaintiff class members.

[27] Although Defendants have not cited it, Plaintiffs respectfully inform the Court that in *Southwest Gas Corp. v. Third Judicial Dist. Court*, 449 P.2d 259 (Nev. 1969), the Nevada Supreme Court held that a Nevada "district attorney has the power to act solely on behalf of his own county," *id.*, 449 P.2d at 260, and therefore the district attorney exceeded his authority by including in his county's complaint a class action count proposing to assert claims on behalf of other counties.  *Id.*  Here, if class certification is granted, a Nevada district attorney would act only for his or her own county in determining the county's response to an opt out notice, and otherwise acting to protect that county's interests within the framework of Rule 23.  Plaintiffs submit that the Nevada Supreme Court would not likely hold that Nevada counties and other public entities are barred from plaintiff class participation, particularly since no Nevada district attorney or municipal attorney would be called upon to act for any public entity other than his or her own.

have neglected to inform the Court that the Iowa Supreme Court has affirmed the certification of a plaintiff class of at least 80 Iowa counties and cities. *See City of Dubuque v. Iowa Trust*, 519 N.W.2d 786, 791-793 (Iowa 1994).

As demonstrated above, Defendants have proffered ubiquitous, "readily found" [DB 20] state statutes and local laws that do not address class actions. They offer not a single relevant state appellate court precedent supporting their proposed construction of these laws. Defendants forget that "[w]hen resolving unsettled questions of state law, a federal court should attempt to make sense, not nonsense" of state statutes and cases. *Lukas v. McPeak*, 730 F.3d 635, 640 (6th Cir. 2013) (citing *Things Remembered Inc. v. Petrarca*, 516 U.S. 124, 136 (1995) (Ginsburg, J., concurring) (interpretation of statute)).

### 2.    No Relevant State Statute or Appellate Decision Disables States from Benefitting as Absent Plaintiff Class Members

Defendants' public entity exclusion argument should also be rejected when applied to states and their sovereign subunits. Defendants proffer statutes they contend disable the states from participation as absent plaintiff class members. But these statutes are simply the legislative designations of the powers of each state's attorney general – virtually every state has such a statute. Defendants focus on language stating that the attorney general "shall" or "may" appear or represent the state in "all" (or some) civil litigation, contending that such language deprives the state attorney general of the discretion to decide that plaintiff class participation, as opposed to commencing an individual action, best serves the states' interests in a particular case. Defendants' argument ignores the nature of the office of state attorneys general:

> The office of attorney general is older than the United States …. As chief legal representative of the king, the common law attorney general was clearly subject to the wishes of the crown, but, even in those times, the office was also a repository of power and discretion; the volume and variety of legal matters involving the crown and the public interest made such limited independence a practical necessity. Transposition of the institution to this country, where governmental initiative was diffused among the officers of the executive branch and the many individuals comprising the legislative branch, could only broaden this area of the attorney general's discretion.

31

As a result, the attorneys general of our states have enjoyed a significant degree of autonomy.  Their duties and powers typically are not exhaustively defined by either constitution or statute but include all those exercised at common law. There is and has been no doubt that the legislature may deprive the attorney general of specific powers; but in the absence of such legislative action, he typically may exercise all such authority as the public interest requires. And the attorney general has wide discretion in making the determination as to the public interest.

*Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 268-269 (5th Cir. 1976).

As with Defendants' local statutes above, none of Defendants' proffered attorney general statutes contain language addressing class actions, and none have ever been construed by any state appellate court to bar any state from belonging to a class.  As detailed below, the likelihood of any of the relevant states' highest courts construing such statutes to preclude the state from the option of benefitting as an absent plaintiff class member from the efficient aggregation and resolution of claims offered by the Rule 23(b)(3) class action device is non-existent.

**New York:** The New York statute relied upon by Defendants, N.Y. Exec. Law § 63(1), contains no language addressing whether New York's attorney general has the authority to decide that New York's best interests would be served by participating in a Rule 23(b)(3) class action as an absent plaintiff class member.  Nor do Defendants offer any New York Court of Appeals or Appellate Division precedent construing Section 63(1) to foreclose such a decision by the attorney general.[28]  Moreover, Defendants admit, as they must, that Section 63(1) does not require the New York attorney general to initiate and prosecute all civil litigation affecting the state's interests, but instead requires only that the attorney general receive notice of such an action "so that he may participate or join therein ***if in his opinion*** the interests of the state so

---

[28] Defendants cite *Morgan v. N.Y. State Dep't of Envtl. Conservation*, 779 N.Y.S.2d 643 (N.Y. App. Div. 3d Dep't 2004) and *New York v. AMTRAK*, 233 F.R.D. 259 (N.D.N.Y 2006), but neither case involved a class action nor addressed the attorney general's authority to determine whether New York should participate as an absent plaintiff class member or instead opt out and bring its own individual action.

32

*warrant.*" N.Y. Exec. Law § 63(1), quoted at DB 13.[29]  Plaintiffs' proposed Rule 23(b)(3) class action necessarily contemplates that, should a class be certified in this case, New York's attorney general will receive a notice describing the nature of the suit and soliciting the exercise of his discretion about participation as an absent class member (with full opportunity to appear on behalf of the state, "if in his opinion the interests of the state so warrant "), or to opt out and bring an individual action (or not).  *See* F. R. Civ. P. 23(c)(2)(B).  The New York Court of Appeals has held that, as in most states, the New York attorney general has broad common law powers that have not been abrogated.  *See Landau v. Hynes*, 49 N.Y.2d 128, 136 (N.Y. 1979) ("[T]he common-law powers of the Attorney-General have never been abrogated by any constitutional provision or legislative enactment.").  The New York attorney general has specifically asserted New York's right to participate in class actions as an absent plaintiff class member.  *See In re Fine Paper Litigation*, 632 F.2d at 1087-1088.

**North Carolina:**  Defendants rely on N.C. Gen. Stat. § 114-2(1), which states that it is the attorney general's duty "to appear for the State in any other court or tribunal in any cause or matter, civil or criminal, in which the State may be a party or interested."  Without mentioning class actions, the statute's express language suggests that the attorney general must appear for the state not only in cases in which it is a named party, but also in cases in which it is not a named party, but is "interested."  As detailed above, Rule 23 fully accommodates any such duty."  The only North Carolina case precedent proffered by Defendants does not deal with class actions, but establishes that, as in most states, the North Carolina attorney general has broad

---

[29] Defendants argue that notice to the attorney general must be given "first" prior to initiation of the litigation, but Section 63(1) contains no language supporting that contention, nor do Defendants offer any case precedent construing Section 63(1) to impose such a requirement.  In fact, Section 63(1)'s language suggests that so long as the purpose of the notice – to allow the Attorney General to meaningfully exercise his discretion concerning whether he should participate or join – is satisfied, notice prior to commencement is not required.  New York's legislature knows how to mandate prior notice to the Attorney General.  *See, e.g., Boy Scouts of Am. v Cayuga County Council No. 366*, 919 N.Y.S.2d 448 (N.Y. App. Div. 4th Dep't 2011) (applying statutory requirement of 15 days prior notice to Attorney General before court approval of disposition of corporate assets).

common law powers that have not been abrogated.  *See Martin v. Thornburg*, 359 S.E.2d 472, 479 (N.C. 1987).

**Michigan:**  Defendants rely on Mich. Comp. Laws § 14.28, which states that the attorney general "may, when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested."  On its face, this provision is permissive, not mandatory.  Under the statute, the attorney general's appearance is left to the discretion of the attorney general.  As detailed above, Rule 23 fully accommodates any discretionary appearance by Michigan's attorney general in the event Michigan elects to benefit as an absent plaintiff class member should a Public Entities class be certified at some point. Defendants proffer no decision of any Michigan appellate court that construes Mich. Comp. Laws § 14.28 to foreclose such an election.[30]

Other statutes cited by Defendants are equally unavailing:

- **Arizona:**  Defendants proffer Ariz. Rev. Stat. § 41-192, for the simple proposition that the "attorney general shall have charge of and direct the department of law and shall serve as chief legal officer of the state [and] shall … be the legal advisor of the departments of this state and render such legal services as the departments require."  Nothing in the language proffered by Defendants even approaches

---

[30] Defendants cite *In re Certified Question from the United States Dist. Court for the E. Dist. of Mich. v. Philip Morris,* 638 N.W.2d 409 (Mich. 2002), which holds that the Michigan attorney general has authority to settle claims on behalf of counties in a suit brought and prosecuted by the attorney general in matters of statewide interest.  It does not address the question of whether the attorney general can, in his or her judgment, elect on behalf of the state to participate as an absent plaintiff class member.  However, it offers strong guidance.  The Michigan Supreme Court emphasized that "[i]n determining what constitutes a state interest for the purpose of deciding ***whether*** to initiate litigation, the Attorney General has broad statutory discretion: MCL 14.28 explicitly provides that the Attorney  General may become involved in litigation "when in his own judgment the interests of the state require it . . . ."  *In re Certified Question*, 638 N.W.2d at 414-415 (emphasis added).  This recognition of broad discretion suggests that the attorney general is authorized, in connection with a class action notice, to decide ***whether*** (or not) to opt out and initiate an individual action on behalf of the state.

suggesting that the attorney general lacks the authority to decide for the state whether its interests would be best served by participating as an absent plaintiff class member, or instead by pursuing an individual action.  *See* F. R. Civ. P. 23(c)(2)(B).  Defendants offer no Arizona appellate decisions construing Ariz. Rev. Stat. § 41-192.[31]

- **Maine:**  Defendants proffer Me. Rev. Stat. tit. 5, § 191(3), which states, in relevant part, "The Attorney General or a deputy, assistant or staff attorney shall appear for the State, the head of any state department, the head of any state institution and agencies of the State in all civil actions and proceedings in which the State is a party or interested, or in which the official acts and doings of the officers are called into question, ***in all the courts of the State*** and in those actions and proceedings ***before any other tribunal when requested*** by the Governor or by the Legislature or either House of the Legislature." (emphasis added).  The mandatory appearance language applies to civil actions "in all the courts of the State," whereas with respect to civil actions in "any other tribunal," such as, for example, a United States District Court, the Maine attorney general's appearance is mandatory only if requested by the Governor or the legislature.  Defendants cite no decision of any Maine appellate court that construes this statute to foreclose the state from benefitting as an absent plaintiff class member.[32]  Defendants fail to apprise the Court of *Superintendent of Ins. v. Attorney Gen.*, 558 A.2d 1197 (Me.1989), in which Maine's highest court construed Section 191(3) specifically, and held that even with respect to actions in state court, the mandatory "shall appear" is not mandatory, but instead the statute must be construed consistently with the attorney general's long-established  "wide discretion" in making determinations "as to the public interest," and consistently also with other statutes authorizing contracting for representation by private counsel, such that the attorney general can determine that the public interest does not require his appearance.  *Id.*, 558 A.2d at 1200.

- **Maryland:**  Defendants rely on Md. Code State Gov't § 6-106, which provides that "the Attorney General … shall represent and otherwise perform all of the legal work for each officer and unit of the State government" and that any "officer

---

[31] Defendants cite an Arizona Attorney General opinion, 1989 Ariz. Op. Att'y Gen. 44, but this opinion does not address whether Ariz. Rev. Stat. § 41-192 prevents Arizona from electing to benefit as an absent plaintiff class member and offers no guidance concerning whether the Arizona Supreme Court would construe the statute to have this effect.

[32] Defendants cite *In re Estate of Thompson*, 414 A.2d 881, 890 (Me. 1980) supposedly to establish that under Section 191(3), the Attorney General must represent the state in all civil actions, but *Estate of Thompson* did not address Section 191(3).  It was a charitable trust case under Section 194, and the case said nothing about exclusive representation of the state by the Attorney General.

or unit of the State government may not employ or be represented by a legal adviser or counsel other than the Attorney General or a designee of the Attorney General." The language of the Maryland statute is silent on the issue of class actions. Moreover, similar to the Arizona statute relied on by Defendants above, nothing in the language of the Maryland statute even remotely suggests that the attorney general lacks the authority to decide for the state whether its interests would be best served by participating as an absent plaintiff class member, or instead by pursuing an individual action. *See* Fed. R. Civ. P. 23(c)(2)(B). The only Maryland case proffered by Defendants does not deal with class actions, and is totally inapposite.[33] As reflected by the Court of Appeals of Maryland, in *Murphy v. Yates*, 348 A.2d 837, 845 (Md. 1975), the Maryland state attorney generals "are vested with the broadest official discretion (citation omitted)" as under common law.

- **Minnesota:** Defendants rely on Minn. Stat. § 8.01, which states that "[t]he attorney general shall appear for the state in all causes in the supreme and federal courts wherein the state is directly interested." This statute says nothing about class actions. The language of the Minnesota statute does suggest that the attorney general must appear for the state not only in cases in which it is a named party, but also in cases in which it is not a named party, but is "directly interested." As noted above, Rule 23 fully accommodates this. Defendants ignore Minnesota appellate decisions establishing that the attorney general has broad common law authority to take all actions "*as he deems necessary*" to protect the state's interests. *State v. American Family Mut. Ins. Co.* 609 N.W. 2d 1, 4 (Minn. App. 2000).[34]

- **New Mexico:** Defendants rely on N.M. Stat. § 8-5-2(B), which provides that the attorney general has discretion to prosecute and defend actions in, *inter alia*, federal district courts "when, in his judgment, the interest of the state requires such actions or when requested to do so by the governor." *See also* § 8-5-2(J), which provides that the attorney general shall "appear before local, state and

---

[33] Defendants cite *Duckworth v. Deane*, 903 A.2d 883, 890 (Md. 2006) for the proposition that the relevant statute "barred a Maryland state officer from intervening as a party to a court proceeding without being represented by the Attorney General or his designee." [DB 15] *Duckworth* was about whether the state same-sex marriage ban was constitutional. The state attorney general was already representing the state's interests. The Maryland Supreme Court held that a county clerk, represented by private counsel, lacked the right to intervene to protect what the clerk "disingenuous[ly]" described as personal interests. *Id.*, 903 A.2d at 891. *Duckworth* offers no support for Defendants' motion to denude the Maryland attorney general of discretion to decide that Maryland's interests would be served by participation as a plaintiff class member.

[34] Defendants cite *State ex rel. Peterson v. Fraser*, 254 N.W. 776, 778-79 (Minn. 1934), but this case neither stands for Defendants' proposition nor contains the language quoted at DB 15.

federal courts … to represent and to be heard on behalf of the state" again as in §
8-5-2(B), "when, in his judgment, the public interest of the state requires such
action or when requested to do so by the governor …." On their face, these
provisions are permissive, not mandatory, with the attorney general's appearance
left to the discretion of the attorney general. As noted above, Rule 23 fully
accommodates this.[35]

- **West Virginia:** Defendants rely on W.Va. Code § 5-3-2, which states that "[t]he
  attorney general shall appear as counsel for the state in all causes pending in the
  supreme court of appeals, or in any federal courts, in which the state is
  interested." As previously explained, Rule 23 fully accommodates appearance by
  the attorney general if a class is certified and the state elects not to opt out. As in
  most other states, the West Virginia attorney general retains broad common law
  powers. *See State ex rel. Discover Fin. Servs. v. Nibert*, 744 S.E.2d 625, 645
  (W.Va. 2013).[36]

## V.   DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
   SHOULD BE DENIED FOR FAILING TO COMPORT WITH RULES 8
   AND 9

Defendants' motion includes a request for a more definite statement under Rule 12(e),

asking this Court to require Plaintiffs to make specific allegations about how the named

representative governmental entities authorized Plaintiffs' attorneys to bring this action.

Initially, it should be noted that "[m]otions for a more definite statement are viewed with

---

[35] Defendants' citation to *Abreu v. New Mexico Children, Youth & Family Dep't*, 646
F.Supp.2d 1259 (D.N.M. 2009) [DB 15] is inapposite. In *Abreu*, the State of New
Mexico hired private counsel – to be paid from the public fisc – to represent certain
defendant state entities. *Abreu* held that removal of the case to federal court by such
private counsel constituted a valid waiver by the state of its 11th Amendment immunity.
*See, e.g.*, *id.*, 646 F.Supp.2d at 1264. If anything, *Abreu* supports the conclusion that
New Mexico's attorney general has discretion to decide whether New Mexico should
participate as a plaintiff class member, or opt out.

[36] The only case cited by Defendants, *State ex rel. McGraw v. Burton*, 569 S.E.2d 99
(W.Va. 2002) did not involve any class action issue, and held that "in all instances when
an executive branch or related State entity is represented by counsel before a tribunal, the
Attorney General shall appear upon the pleadings as an attorney of record; however, this
requirement does not bar other counsel from also appearing and acting in a legal capacity for
the State entity." *Id.*, 569 S.E.2d at 117. As previously noted, Rule 23 accommodates any
appearance the West Virginia attorney general may wish to make if a class is certified and
West Virginia elects not to opt out.

disfavor, and are rarely granted." *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). This disfavor stems from the fact that the Federal Rules require only notice pleading and allow liberal discovery, and thus defendants are expected to garner most of their information about the case, not from the face of the complaint, but in subsequent discovery. *Hobbs v. BH Cars, Inc*., 2004 U.S. Dist. LEXIS 10735, 5 (S.D. Fla. June 4, 2004) ("Motions for a more definite statement are not substitutes for discovery.") Indeed because Rule 8 requires only a "short and plain" statement of allegations, Rule 12(e) should be "strictly construe[d]," *Poole v White*, 2 F.R.D. 40 (D. W.Va. 1940), not in a manner that would "unduly expand the pleadings." *Bellavance v Frank Morrow Co.,* 2 F.R.D. 9 (D.R.I. 1941). Accordingly, as the court stated in *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999):

> 'The proper test in evaluating a motion under Rule 12(e) is whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings.' *Federal Sav. and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988). Generally, the Court will require a more definite statement only when the pleading is 'so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself.' *Delta Educ., Inc. v. Langlois*, 719 F. Supp. 42, 50 (D.N.H. 1989) (*quoting* 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1376). The Motion wholly fails to meet this standard.

Defendants are not complaining that they do not understand the Amended Complaint and are unable to admit or deny its allegations. Rather, they are complaining that it does not contain a specific allegation they desire about authorization that they want to attack. In essence, they want an allegation that they can use to oppose class certification or to move for summary judgment, but such procedural devices are for a later day.[37] That procedural attack should not be shoehorned into a motion for more definite statement, for it is evident from the Motion that Defendants are not unable to respond to the Amended Complaint. Indeed, they are very clear about how they want to attack it.

---

[37] Plaintiffs believe such an opposition or motion should also prove unavailing, but on grounds other than those raised here concerning the impropriety of a motion for more definite statement.

The motion for a more definite statement is also improper in light of Rules 8 and 9. Defendants are in essence asking this Court to require that private counsel specifically allege that they are authorized to proceed on an action for a governmental entity.  As the Seventh Circuit stated in *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975):

> Rule 8 requires that a plaintiff give through his pleadings notice to defendant of the nature of his claims. *Cf.* Appendix of Forms, FED. R. CIV. P., Forms 6, 9 and 11. It urges the plaintiff to make known his claims simply and concisely in short, plain statements. With these principles in mind, the purpose of rule 9 becomes clear. Rule 9 lists the actions in which slightly more is needed for notice.

Rule 9 does not require counsel to allege specifically that they were authorized to sue on behalf of their client.  Indeed, such an allegation would be wholly inconsistent with federal practice, where complaints and answers almost never contain a specific allegation that the client authorized counsel to file the document.  Such an allegation is certainly absent in the responsive pleadings Defendants have filed in other actions in *In re Automotive Parts Antitrust Litigation.*

Further, despite Defendant's insinuations to the contrary, Defendants' argument ignores the reality of local government legal practice.  Defendant's implicit premise that it is very rare for a local government not to be represented by its own civil servants is simply incorrect.  But private counsel represent local governmental entities all the time, in matters as varied as bond issuance, franchise negotiations, bankruptcy, tort defense, and land use disputes.  Nor can cash-strapped governmental entities be expected to handle all their own litigation in-house, any more than Defendants here have chosen to be represented solely by in-house counsel.  In fact, one might argue that municipalities need to hire outside counsel with a wide range of expertise to represent them in the broad scope of matters demanded by their public role, and anything less is a disservice to the public.

Because Rule 9 does not require a specific allegation that private attorneys are authorized to represent governmental entities, imposing such a requirement would violate Rule 8's mandated notice pleading regime.  *See, e.g., Donahue v L. C. L. Transit Co.*, 492 F.Supp. 288,

293-94 (W.D. Wisc. 1980) (declining to require specific allegation of agency because "Plaintiff is not required to plead agency with particularity since Rule framers failed to require such particularity in Rule 9.").  Indeed, Rule 9 directs explicitly that the sort of specific allegation of authority to sue Defendants request need not be made:

> Except when required to show that the court has jurisdiction, a pleading need not allege: (A) a party's capacity to sue or be sued; [or] (B) a party's authority to sue or be sued in a representative capacity. . . . (2) Raising Those Issues.  To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

Fed R. Civ. P. 9(a)(1) & (2).  Of course, Plaintiffs have alleged more than enough to demonstrate that this court has jurisdiction.  Accordingly, under Rule 9 itself, Plaintiffs need not allege specifically their authority to sue.  Rather, it is incumbent upon Defendants to raise the absence of such authority in their answer.  *See, e.g., Lang v Texas & P. R. Co.* 624 F2d 1275, 1277 (5th Cir. 1980) ("Rule 9(a) requires defendant to plead absence of capacity although it does not require plaintiff to aver capacity.").

The Motion is also defective for a lack of supporting declarations.  Unlike a motion to dismiss, which is generally decided upon the face of the pleading, a motion for a more definite statement should be supported by declarations explaining the purported ambiguities that prevent Defendant from answering in good faith.  *See, e.g., Palum v. Lehigh Valley R. Co.*, 5 F.R.D. 216 (E.D.N.Y. 1946) ("Upon such motion there should at least be an affidavit by someone in authority showing the necessity for a more definite statement or a bill of particulars."); *Bicknell v. Lloyd-Smith*, 25 F. Supp. 657 (E.D.N.Y. 1938).  Defendants failed to submit such declarations, most likely because they are not challenging ambiguities in the Amended Complaint or a difficulty in composing an answer but are instead seeking to misuse the procedural device of a motion for a more definite statement to attack a very specific aspect of Plaintiffs' case.

Lastly on the motion for a more definite statement, Defendants' citation to state cases like *Town of Claverack v. Brew*, 716 N.Y.S.2d 748, 750 (N.Y. App. Div. 2000), for a purported duty to allege authorization to sue on behalf of local governmental entities is ill-founded in two

40

respects.  First, those state court cases were applying state procedural law, but of course this federal case is governed by the Federal Rules of Civil Procedure, as shown above in the discussion of *Shady Grove*.  Because, as just demonstrated, the Federal Rules do not require allegations of authorization, any contrary state rules of procedure applicable to state courts should be disregarded.  Second, even if *Claverack* applied, which it does not, the procedural posture of *Claverack* demonstrates the infirmity of the Motion.  In *Claverack* itself, the court granted *summary judgment* because of a failure by plaintiffs to show a triable issue as to their authority to represent a local government.  But such a ruling is far afield from what Defendant's contend here, that Plaintiffs' counsel must be forced to allege in the complaint their authorization to sue, a proposition *Claverack* did not entertain, much less endorse.

## VI.   DEFENDANTS' STANDING ARGUMENTS MUST FAIL BECAUSE THIS COURT HAS ALREADY REJECTED THEM IN SIMILAR *AUTOMOTIVE PARTS* CASES

This Court has denied motions to dismiss numerous times in the *In re Automotive Parts Antitrust Litigation* related to wire harness systems and other automotive parts based on the argument that the Court should decide at the outset whether class representatives have standing to pursue claims in states where no named plaintiff resides.[38]  Defendants making this argument have relied heavily, as do Defendants here, on two cases from this district: *In re Refrigerator Compressors Antitrust Litig.*, 09-md-02402 2012 WL 2917365 (E.D. Mich. July 17, 2012) and *In re Packaged Ice Antitrust Litig.*, 779 F. Supp.2d 657 (E.D. Mich. 2011).  In rejecting this argument, this Court has reasoned soundly that *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) and *Amchem Prod. Inc v. Windsor*, 521 U.S. 591, 612 (1997) endorsed postponing

---

[38] *See, e.g., In re Auto. Parts Antitrust Litig.,* Nos. 12-cv-00302 & 12-cv-00303, 2014 WL 2993742, at *11-12 (E.D. Mich. July 3, 2014)*; see also In re Auto. Parts Antitrust Litigation*, Nos. 12-cv-00202 & 12-cv-00203, 2014 WL 2993753, at *8-9 (E.D. Mich. July 3, 2014); In re Auto. Parts Antitrust Litig.*, Nos. 12-cv-00402 & 12-cv-00403, 2014 WL 2999269, at *10-11 (E.D. Mich. July 3, 2014); *In re Auto. Parts Antitrust Litig.,* Nos. 12-cv-00102 & 12-cv-00103, 2013 WL 2456612, at *9-12 (E.D. Mich. June 6, 2013)*.

standing considerations for class action cases until after class certification, because class certification issues are "logically antecedent to Article III" concerns about standing. This Court further reasoned that the *Ortiz* and *Amchem* approach should apply to indirect purchaser antitrust actions because the Sixth Circuit applied that approach in a conceptually indistinguishable ERISA class action: *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422-23 (6th Cir. 1998) ("Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure.); *accord Campbell v. Hope Cmty. Credit Union*, 2012 U.S. Dist. LEXIS 15530 at 11-2 (W.D. Tenn., Feb. 7, 2012).[39]  As *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 667-668 (E.D. Mich. 2008), stated, in language that has been quoted with approval by this Court:

> Even if the plaintiff has standing to assert claims in this jurisdiction (which is not challenged here), to proceed as a representative of a class he must still establish that his claim is typical of those individuals whose claims arise under the laws of other states and he can represent those individuals adequately. See Fed. R. Civ. P. 23(a). That determination must be made before the Court can decide whether the plaintiff has standing to maintain a class action as the named plaintiff; and therefore the decision on class certification is logically antecedent to the determination of standing. For example, with the facts presented in the complaint, the plaintiff certainly could not file an individual suit only seeking relief under Arizona law; however, a member of his proposed class from that state likely would have suffered an injury that could be redressed under Arizona law. The defendant has not seriously challenged the plaintiff's standing to assert his claims arising from the alleged overcharge on his own refinancing transaction. The question whether he has standing to proceed as a class representative will be subsumed in the class certification decision.

---

[39] *See also Payton v. County of Kane*, 308 F.3d 673, 681 (7th Cir. 2002) (named plaintiffs injured by conduct of 2 Illinois counties sought to represent parties injured by the same conduct in a total of 19 Illinois counties; 7th Circuit held " We conclude that the plaintiffs may be entitled to represent a class suing all 19 defendant counties if, under the reasoning of *LaMar* and its progeny [*i.e.*, plaintiffs as a group have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme], they fulfill all the requirements of Rule 23."); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F.Supp.2d 367, 408,  (D. Mass. 2013) (on motion to dismiss, defendants sought to dismiss antitrust claims for states without a resident named representative; court "postpone[d] its determination as to whether the named representatives may pursue claims on behalf of its absent class members under Rule 23 until the time it entertains the certification of the putative class").

This analysis is just as applicable to the instant case featuring a class of governmental entities as it was to earlier classes of other indirect purchasers addressed by this Court. Indeed, Defendants cite no case holding that the *Ortiz-Amchem-Fallick* analysis applies to classes of private citizens or business entities but not to classes of local governmental entities. Nor would such a distinction make any sense. The basis of the *Ortiz-Amchem-Fallick* holdings, and this Court's earlier rulings, is that, once a named plaintiff has alleged its own harm as a result of a defendant's misconduct, the question of whether that named plaintiff can assert the claims of the class, including class members residing in other states, is properly addressed at class certification, for certification is "logically antecedent" to the question of the named representative's standing to do so. The nature of that "logical antecedence" does not, and cannot, depend upon the detail of whether the named plaintiff is a natural person, a business entity or a governmental entity.

Rather, Defendants are merely trying to reargue those earlier rulings that they disagree with, using the fact that the instant class consists of governmental entities as a fig leaf for their procedurally improper motion for reconsideration. For example, Defendants' argument that the instant class has a lower percentage of named representatives in the affected states than was true for earlier classes is beside the point. If the question whether a named plaintiff can represent class members in other states should, as a logical matter, be deferred to class certification – which it should be – then the question cannot turn on the proportion of class members that reside in other states. Indeed, such a question going to typicality and adequacy is an archetype of the sort of issue that class certification was designed to handle.

Many of the authorities cited by Defendants do not support their contention that now is the proper procedural moment to address the issue. For example, Defendants cite *Lewis v. Casey*, 518 U.S. 343, 357-58 (1996) [DB 28], but omit the following sentences immediately after the one they quoted: "The general allegations of the complaint in the present case may well have sufficed to claim injury by named plaintiffs, and hence standing . . .That point is irrelevant now, however, for we are beyond the pleading stage." *Id.* at 357. In the instant case, of course, we are

indeed at the pleading stage, not beyond it, and thus the allegation of injury by named plaintiffs is sufficient to defeat a motion to dismiss even under this case cited by Defendants.

Similarly, Defendants distort *Jay v. Rosen,* 288 F.3d 918, 928 (6th Cir. 2002). In that case, the named plaintiffs could not allege any harm to themselves from Defendant's misconduct, and the Sixth Circuit merely applied long-standing law that a named plaintiff who lacked standing to assert any claim on its own behalf could not garner standing merely by representing a class. *Id.* Here, by contrast, the named plaintiffs have each alleged that it was harmed in its business or property by Defendant's misconduct. *See, e.g.,* AC ¶¶ 218-250. Consequently, they are in the same position as other named plaintiff in the *Automotive Parts Antitrust Litigation* generally, where this Court has already repeatedly ruled that the question whether they can represent class members in other states should be addressed at class certification, not upon a motion to dismiss.

**VII.   DEFENDANTS' CITE TO *IN RE LITHIUM BATTERIES ANTITRUST LITIGATION* IS INAPPOSITE TO THIS CASE**

In an effort to avoid the clear import of this Court's earlier rulings, Defendants argue that this time a motion to dismiss should be granted on the issue of whether the named representative governmental entities can represent the Public Entities class, relying heavily on the recent case of *In re Lithium Ion Batteries Antitrust Litig.*, 2014 U.S. Dist. LEXIS 141358 (N.D. Cal. Oct. 2, 2014). But in that case, the district court in the Northern District of California emphasized that "this District consistently has applied the principle" that a motion to dismiss should be granted as to each state law claim for which a state resident is not a named representative. *Id.* at 102. The district court decisions cited in *In re Lithium Batteries Antitrust Litig*. on that point consider the *Amchem-Ortiz* precedent, discussed above, but make scant mention of *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422-23 (6th Cir. 1998), also discussed above, no doubt because it is out-of-circuit authority as to them. On the question presented, this Court has correctly determined that Sixth Circuit law in *Fallick* has interpreted *Amchem* and *Ortiz* to mean that the question whether a class representative can adequately represent class members in other states is

44

properly resolved at class certification, not upon a motion to dismiss. That another district court in the Northern District of California has concluded differently is beside the point, for this Court is obligated to apply relevant Sixth Circuit precedent. *See, e.g., Higgins v. Closeout Distribs. (In re Higgins)* 159 B.R. 212 (S.D. Ohio1993) ("The general rule, of course, is that the district courts are bound by decisions of the Sixth Circuit . . ."); *Timmreck v. United States*, 577 F.2d 372, 374 n.6 ("The district courts in this circuit are, of course, bound by pertinent decisions of this Court . . ."), *rev'd on other grounds*, 441 U.S. 780, 60 L. Ed. 2d 634, 99 S. Ct. 2085 (1979)).

Further, Defendants are asking this Court to impose a requirement that Plaintiffs allege now their authority to sue on behalf of all governmental entities in the class, including those in other states. That effort also runs afoul of the discussion above in connection with Defendant's motion for a more definite statement because Rule 9 contains no directive requiring such an allegation, and Rule 9 is the exclusive source for requiring such specific pleading.

Defendants' argument that denying the motion to dismiss would preclude settlement is also misguided. Defendants assert in a rehash of their earlier argument concerning the 11th Amendment that *Walker v. Liggett Group, Inc.*, 982 F. Supp. 1208 (S.D. W.Va. 1997) establishes that federal courts lack jurisdiction over states that participate in a settlement. As demonstrated above, however, *Walker* was wrongly decided. Moreover, as detailed at n,20 *supra*, the proposition that a governmental entity could accept money to release a claim pursuant to a court-approved federal class action settlement, but then turn around and assert the same claim on its individual behalf is nonsensical. As stated above, multiple cases in this Circuit and elsewhere have included classes of governmental purchasers; there is no real world indication that any of them had more difficulty settling than do typical classes of private or corporate purchasers.

Lastly, granting Defendants' request would take class action practice in a disturbing direction. By trying to erect a host of obstacles to governmental purchasers seeking to recover for the same overcharge as was allegedly imposed on other purchasers of automotive wire harness systems, Defendants here are trying to preclude the Public Entities from recovering for the exact same injury to their business or property. When all purchasers get compensated for

45

harm they suffered as a result of misconduct, except governmental purchasers, ultimately the taxpayers that pay the government's bills are the ones who bear the brunt of the injustice, and the Defendants here – admitted antitrust violators – are the ones who evade liability for their intentional misconduct.  Plaintiffs respectfully submit that this Court should decline Defendants' invitation to leave open the doors of the courthouse to other purchasers while slamming those doors in the face of the taxpayers who foot the bills.

## VIII.   CONCLUSION

For the reasons set forth above, the Motion should be denied.  If the Court disagrees, Plaintiffs respectfully request leave to amend to address any deficiencies identified by the Court in its ruling.

Dated:  November 25, 2014                    **GREEN & NOBLIN, P.C.**


By: _____s/ James Robert Noblin_____
    JAMES ROBERT NOBLIN

Robert S. Green
James Robert Noblin
Lesley E. Weaver
**GREEN & NOBLIN, P.C.**
700 Larkspur Landing Circle, Suite 275
Larkspur, CA  94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

Karen L. Morris
Patrick F. Morris
R. Michael Lindsey
**MORRIS AND MORRIS, LLC**
4001 Kennett Pike, Suite 300
Wilmington, DE 19807
Telephone:  (302) 426-0400
kmorris@morrisandmorrislaw.com

Jaye Quadrozzi
**YOUNG & ASSOCIATES**
Orchards Corporate Center
27725 Stansbury Boulevard, Suite 125
Farmington Hills, MI  48334
Telephone:  (248) 353-8620
Email: Quadrozzi@youngpc.com

Louise H. Renne
K. Scott Dickey
Steve Cikes
**RENNE SLOAN HOLTZMAN SAKAI LLP**
350 Sansome Street, Suite 300
San Francisco, CA 94104
Telephone:  (415) 678-3800
lrenne@publiclawgroup.com
sdickey@publiclawgroup.com
scikes@publiclawgroup.com

Mark A. Cuthbertson
**Law Offices of Mark A. Cuthbertson**
434 New York Avenue
Huntington, NY 11743
Telephone:  (631) 351-3501
mcuthbertson@cuthbertsonlaw.com

Attorneys for Plaintiffs

47

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2014, I caused the foregoing **PLAINTIFFS'**

**OPPOSITION TO DEFENDANTS' COLLECTIVE MOTION (1) TO DISMISS ALL**

**CLASS COMPONENTS OF THE COMPLAINT AND (2) FOR A MORE DEFINITE**

**STATEMENT REGARDING NAMED PLAINTIFFS' INDIVIDUAL CLAIMS** to be

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.

*s/ James Robert Noblin*
JAMES ROBERT NOBLIN

48